STATE ex rel. STACEY VAN AMRINGE v. JOHN D. TAYLOR.

*Election—Officer de facto.*

1. It is essential to the validity of an election that it shall be held under some proper authority, and conducted substantially in the manner prescribed by law.
2. To constitute an officer *de facto* it is requisite that there be some colorable election or appointment to and induction into the office.
3. One who usurps an office may act for such a length of time or under such circumstances as to raise a presumption of his right to act, in which event his acts are valid as to the public and third persons.
4. Where it appeared that a duly appointed registrar of voters appointed a clerk to assist him, but who fraudulently got possession of the registration books and refused to surrender them, and proceeded in defiance of the demands and protest of the registrar to appoint judges of election, open polls, receive, canvass and make returns: *Held*, that the clerk was a mere usurper and the election was void.

CIVIL ACTION, tried at January Term, 1890, of NEW HANOVER Superior Court, *McIver, J.*, presiding.

The relator alleges in his complaint that he was duly elected Clerk of the Superior Court of the county of New Hanover at the regular election held in that county in November of 1890; that, nevertheless, the county canvassing board of that county falsely and wrongfully ascertained and declared that the defendant, who was his competitor at the said election, was duly elected to said office, and afterwards he was inducted into and now holds and exercises and receives the fees and emoluments thereof, and refuses to surrender the same, etc.; that the said board so ascertained by refusing to count the vote cast at Cape Fear precinct in said county, which, if the same had been counted, as it ought to have been, would have given him a just and clear majority of the whole number of votes cast in said county, etc. He demands judgment that he was so duly elected, that defendant was not, that he be inducted into office, etc.

The defendant denies that plaintiff was so elected Clerk; alleges that he was; admits that if the vote which purported to be cast at the said Cape Fear precinct had been lawful and had been counted by the said canvassing board, then the relator would have been elected; but he alleges that the said election at said precinct was absolutely void, because it was not held by a registrar and judges of election according to law, etc.

On the trial the Court submitted to the jury this issue: " Was the plaintiff relator, S. Van Amringe, duly elected to the office of Clerk of the Superior Court of New Hanover County on the 4th day of November, 1890, and is he entitled to be inducted into said office?"

There was a verdict and judgment for the defendant, and the relator appealed to this Court, assigning as grounds of error—

2. The refusal of the Court to submit issues offered by the relator.

4. Charging that if Thomas obtained the registration books fraudulently, under promise to return them, and assumed to act as registrar, he was an intruder and had no authority, and could perform no lawful official act, and in consequence the election held by him and his appointees was void.

5. In charging that if they found that Cowan continued to act as registrar and employed Thomas, a clerk, to assist him, and that Thomas while sustaining this relation fraudulently obtained, etc., as set out in above section No. 4.

*Mr. D. L. Russell*, for plaintiff.
*Messrs. George Rountree* and *M. Bellamy*, for defendant.

MERRIMON, C. J.: The ascertainment of the popular will or desire of the electors under the mere semblance of an election unauthorized by law is wholly without legal force or effect, because such election has no legal sanction. In settled, well-regulated government, the voice of electors must be expressed and ascertained in an orderly way prescribed by law. It is this that gives order, certainty, integrity of character, dignity, direction and authority of government to the expression of the popular will. An election without the sanction of the law expresses simply the voice of disorder, confusion and revolution, however honestly expressed. Government cannot take notice of such voice until it shall in some lawful way take on the quality and character of lawful authority. This is essential to the integrity and authority of government. Hence, if a person assume to be a registrar of elections and four others likewise assume to be judges of election, and purport and undertake to hold an election on election day, in an election precinct, and take and count the votes cast at it honestly, such action and proceeding would be no election, nor would it be accepted and treated as such by authority. An essential element of a valid election is

that it shall be held by lawful authority, substantially as prescribed by law. It is not sufficient that it be simply conducted honestly, it must as well have legal sanction. The statutory provisions and regulations in respect to public elections in this State must be observed and prevail, certainly in their substance. Otherwise, the election will be void and so trea ed. Therefore, the contention that if the election in question was simply conducted fairly and honestly it was valid, is unfounded.

The Court instructed the jury that Thomas was registrar *de facto* if they believed either of the two aspects of the evidence, and the election would hence be valid. As to this there was no exception. But the Court said further: "If you find from the evidence that Cowan continued to act as registrar and employed Thomas as clerk to assist him, and that Thomas, whilst sustaining this relation to Cowan, fraudulently obtained possession of the books on the second Saturday preceding the election, with a promise to return them, and assumed to act as registrar, he was an intruder and had no authority and could perform no lawful official act, and in consequence the election held by him and his appointees was void, and your answer to the issue should be No" This is made the principal ground of assignment of error.

The instruction thus complained of, must be taken in connection with the whole of the instructions given, and in view of all the evidence pertinent. The evidence tended to prove that one Cowan was duly appointed to be *registrar;* that he accepted the office, and acted as and claimed to be such, continuously, until the day of the election; that he did not resign, or profess to resign; that he did not appoint, or undertake to appoint, Thomas to be registrar; that he was employed and treated simply as his clerk; that Thomas fraudulently got the registration books from the registrar under the false promise to return the same; that he did not do so, but on the day of election expressly refused to surrender the

registration books, and then assumed to be registrar, acted as such, and undertook and purported to appoint three judges of election, who, with a judge regularly appointed, co-operated with him in holding the election. The evidence fully warranted the instruction, if it was correct in point of law.

It is difficult to define, in precise terms, what constitutes an officer *de facto* in all cases. Indeed, what may constitute such officer in one case, may not in another. A variety of facts and circumstances, tending to show authority of the person claiming and exercising it, go to constitute such officer, and upon grounds of necessity and public policy, to give his acts validity as to the public and persons taking benefit of his official acts. There must be something, some consideration, evidence, facts, circumstances or conditions that reasonably lead those persons who, in the course of the administration and the discharge of the duties of the office must, in some way, have relations or business with it, to recognize and treat the person claiming to be officer as the lawful incumbent. But, as was said by Chief Justice RUFFIN in *Burke* v. *Elliott*, 4 Ired., 361, "The mere assumption of the office by performing one, or even several acts appropriate to it, without any recognition of the person as officer by the appointing power, may not be sufficient to constitute him an officer *de facto*. There must at least be some *colorable* election and induction into office *ab origine*, and so *long* an exercise of the office and *acquiescence* therein of the public authorities as to afford to the individual citizen a presumption strong that the party was duly appointed, and, therefore, that every person might compel him, for the legal fees, to do his business, and for the same reason was bound to submit to his authority as an officer of the country."

What was thus said was afterwards approved in *Gilliam* v. *Reddick*, 4 Ired., 368; *Burton* v. *Patton*, 2 Jones, 124; *Commissioners* v. *McDaniel*, 7 Jones, 107; and in *Norfleet* v. *Staton,*

73 N. C., 546, in which case Mr. Justice Reade said: "I scarcely think it necessary to cite authorities to show the distinction between mere usurpers and officers *de facto* and *de jure.* A usurper is one who takes possession without authority. His acts are utterly void, unless he *continues* to act *so long* a time or under such *circumstances* as to afford presumption of his right to act. And then his acts are valid as to the public and third persons. But he has no defence in a direct proceeding against himself. A *de facto* officer is one who goes in under *color* of authority." *Keeler* v. *Newbern*, Phil., 505.

In a late case (*State* v. *Lewis*, 107 N. C., 967), Justice Avery cites with approval *State* v. *Carroll*, 38 Conn., 449, in which Chief Justice Butler reviews very thoroughly and ably the whole subject of officers *de facto*, and reaches substantially this conclusion: "An officer *de facto* is one whose acts, though not those of an officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, when the duties of the office were exercised: first, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some irregularity or defect in its exercise, such ineligibility, want of power or defect being unknown to the public; fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

This summary points out to a very large extent, if not altogether, the nature and extent of the circumstances, conditions, the character of the evidence and the recognition by the public essential in varying pertinent cases to constitute an officer *de facto.* A mere intruder or usurper is not ordinarily, but may become, an officer *de facto* in some cases. This can happen only by the continued exercise of the office by him and the acquiescence therein by the public authorities and the public for such length of time as to afford to citizens generally a strong presumption that he had been duly appointed. But when without *color* of authority he simply assumes to act, to exercise authority as an officer, and the public know the fact, or reasonably ought to know that he is a usurper, his acts are absolutely void for all purposes. The mere fact that, apart from his usurpation, his supposed official acts were fair and honest could not impart to them validity and efficiency. *Burke* v. *Elliott, supra; Norfleet* v. *Staton, supra; State* v. *Carroll, supra;* McCreery on Elections, 217; Paine on Elections. §§ 380, 381.

The citizen is justly chargeable with *laches,* does that which is in his own wrong and wrong to the public, when he recognizes, tolerates, encourages and sustains a mere usurper, one whom he knows or ought, under the circumstances, to know to be such. In such case, neither justice, necessity, nor public policy requires that the acts of the usurper shall be upheld as valid for any purpose. Indeed, these things, the spirit and purpose of government strongly suggest the contrary.

When, therefore, Thomas obtained from the registrar (Cowan) the registration books, fraudulently, under promise to return the same and assumed to act as registrar, he was simply an intruder, and had no authority and could perform no lawful official act as such, and the election which he and the supposed judges, his appointees, co-operating with him, held, was void. The instruction of the Court to the jury

excepted to was pertinent, and had reference to the evidence going to prove that Thomas so fraudulently obtained the registration books and assumed to act as registrar, and the jury must have found that he did. The jury found that he was not registrar *de facto* by reason of *color* of appointment. They found also that he was a fraudulent intruder, but they did not find—nor was there evidence to warrant such finding—that he was an intruder under such circumstances and conditions as to constitute him registrar *de facto*. The evidence went to show that he had been the clerk of the registrar; that he did not claim to be or act as registrar until the day of election; that he had no such reputation; that the electors had not so recognized him; that no public authority had so recognized him at any time, and that, on the morning of the day of the election, in the presence of electors, the lawful registrar had publicly demanded that he surrender to him the registration books, to the end that he and the lawfully appointed judges of election might hold the election according to law, and he refused to do so. The evidence went to prove, and the jury found, that Thomas was a naked intruder, with no attending circumstances and conditions that rendered him registrar *de facto*. The electors had notice that Cowan was the lawful registrar; that he had been duly appointed; that he acted as such. There was no notice that he had resigned his office, nor had he done so. On the contrary, on the morning of the election he claimed his right and authority to hold the election. This was notice—important notice—that Thomas was an intruder, and the election was not such in contemplation of law. The electors ought not to have recognized the intruder. They did so in their own wrong. They ought to have demanded and required that the registrar and the lawful judges of election hold the election according to law. It was their duty to themselves and to the public to have done so, and, failing in this for any cause, they ought not to have gone through an empty

form that had no legal effect. They lost their votes and their voice, in part, through their own *laches*.

The issue of fact submitted to the jury was broad and comprehensive. It embraced the whole of the matter at issue. The relator could readily, as he did, put in all pertinent evidence and avail himself of it before the jury. He was not necessarily prejudiced by it, nor can we see, nor does it at all appear, that he was. The other exceptions are without merit.                                  Judgment affirmed.