THE ATTORNEY GENERAL, EX REL. JOHN SEAVITT, JR.,
v. PETER McQUADE.

*Elections—Secret ballot—Mandatory provisions of statute—Fraud—
Rejecting vote of precinct.*

1. The election law of 1891 is designed to secure absolute
secrecy to the elector, and thus prevent all opportunity for
corrupt practices; and no voter can be compelled to remove the
secrecy of his ballot, and state how he voted.

2. Under our statutes, no unregistered person possesses the right to
vote.   If unable to attend the meetings of the board of regis-
tration for reasons specified in the statute, he may be registered
on election day upon taking the prescribed oath; citing How.
Stat. § 93.

3. The provisions of section 26 of the election law of 1891, requir-
ing the elector to enter the voting booth alone, after receiving
his ballot from the inspector, and there prepare it concealed
from the view of all persons, and then fold it so that no part
of its face shall be exposed, and with the initials of the in-
spector on the outside, and hand it to the inspector, who shall
deposit it in the ballot-box; and of section 32, for the marking
of ballots of illiterate or physically disabled electors by an in-
spector to be designated by the board of inspectors for that
purpose, who is not a candidate on the ticket, in the presence
of at least two of the inspectors,—are mandatory.

4. The action of the chairman of the board of inspectors, in receiv-
ing and depositing in the ballot-box the ballots of 13 unregis-
tered persons, and the ballots of a large number of persons who
had shown them after they had been marked, and in allowing
and instructing third persons to enter the voting booths with
a large number of electors, and, after their ballots had been
marked by such third persons, depositing them in the ballot-
box, is held to have vitiated the vote of the election precinct.

*Quo warranto.*    Argued November 17, 1892.    Decided
December 24, 1892.

Information in the nature of *quo warranto* to test the
right of respondent to hold the office of township clerk of

the township of Ecorse, Wayne county.    Cause remanded for trial.   The facts are stated in the opinion.

*A. A. Ellis,* Attorney General *(Charles C. Stewart* and *John B. Corliss,* of counsel), for relator.

*George H. Prentis,* for respondent.

GRANT, J.   This is a *quo warranto* proceeding to test the right to the office of township clerk of the township of Ecorse, in Wayne county.

The answer to the information alleges that respondent was duly elected to said office at the township election held April 4, 1892; that relator and respondent were the two opposing candidates for said office; that there were two election districts; that respondent received 340 votes and relator 331; that respondent was declared elected by the board of canvassers; that certain illegal votes were cast for relator; and that respondent duly qualified, and entered into said office.

The relator, in his replication, alleges that a good and valid election was held in district No. 1, where he received 260 votes and respondent 201.   The replication then proceeds as follows:

"The returns from district No. 2 showed 139 votes for the respondent, and 71 for the relator, whereas, in truth and in fact, there was no valid election in said district No. 2, because of the willful and fraudulent conduct of the chairman of said board, Hyacinth Riopelle, who openly and fraudulently put into the ballot-box 13 ballots or votes of persons who were not registered, and a large number of ballots or votes of persons who had shown their ballots after the same had been marked, to wit, 75; that the same was done by said Hyacinth Riopelle willfully and maliciously for the purpose of injuring the said relator; that the said Riopelle refused to swear an inspector for the purpose of marking ballots of incompetent voters in the presence of two inspectors, as required by law, and allowed and instructed third parties to enter the polling booths with a

large number of electors, to wit, 75, and that after the tickets of voters, to wit, 75, had been so marked by third parties in the polling booths, the said Riopelle fraudulently and willfully, and to injure the relator and others on the ticket with him, placed said ballots, to wit, 75, in the ballot-box; that a large number of such votes thus illegally and fraudulently put into the ballot-box by the said Hyacinth Riopelle, to wit, 65, were counted in favor of the respondent; that, by reason of the aforesaid conduct of the said Hyacinth Riopelle, the returns of precinct No. 2 are utterly invalid, and the election in said precinct vitiated, and unworthy of any credit whatever, and the said relator is justly and legally elected by a majority of 59 votes."

It is unnecessary to state any other allegations in the replication, since the question involved arises upon those above stated, the relator insisting that, if these allegations be true, the vote in district No. 2 was void, and must be thrown aside. To this replication the respondent did not demur, but interposed a rejoinder. The above allegations in the replication are neither traversed nor confessed and avoided. The matters therein stated, being traversable, must therefore be taken as confessed and true. Steph. Pl. 217; 1 Chit. Pl. (16th Amer. ed.) *652; McCrary, Elect. § 405. To this rejoinder the relator demurred.

The question, therefore, presented for our determination is, did the conduct of Chairman Riopelle, and those acting under his direction, vitiate the vote of district No. 2? Under our statutes no unregistered person possesses the right to vote. If such person is unable to attend the meetings of the board of registration for certain specified reasons, he may be registered on election day upon taking the prescribed oath. How. Stat. § 93. The election in this case was held under Act No. 190, Laws of 1891, the title to which reads:

"An act to prescribe the manner of conducting, and to prevent fraud and deception at, elections in this State."

A similar law was before this Court in *Common Council*

*v. Rush,* 82 Mich. 532, in which certain defects in the then law were pointed out. The present act was evidently passed to cure those defects, and to provide more stringent regulations to preserve the purity of elections. What was there said in regard to the necessity, wisdom, and validity of such a law applies equally to the present case, and no repetition is necessary.

The elector is required to enter the booth alone, after receiving his ballot from the inspector, and prepare his ballot concealed from the view of all other persons. He must then fold his ticket so that no part of its face shall be exposed, and with the initials of the inspector on the outside, and hand the same to the inspector, who shall deposit it in the box. If he expose his ballot to any person, aside from the inspector authorized to assist him, it must be rejected. Section 26. If the elector shall make oath that he cannot read English, or if it shall be made to appear that from physical disability he cannot mark his ballot, his ballot shall be marked for him, in the presence of at least two of the inspectors, by an inspector designated by the board for that purpose, who is not a candidate on the ticket. Section 32.

. The facts upon this branch of the case were before this Court in *McQuade v. Furgason,* 91 Mich. 438, and it was there said:

"If the statements made in the answers of the respondents and the affidavits accompanying them are true, the election law of this State was most grossly violated."

The importance which the Legislature attached to the provisions of the law is manifest in section 45, by which any violation of them is made a felony, punishable by a fine not exceeding $1,000, or imprisonment in the State prison not exceeding two years, or by both. These provisions of the law must be held mandatory, or else the purpose of the law is defeated, and the opportunities for fraud are

increased, rather than diminished. If an inspector or other person be permitted to enter the booths with the voters, the danger is far greater than under the old system, where there was some opportunity to see and detect fraud. Under this practice venal voting could be readily accomplished. The law is designed to secure absolute secrecy to the elector, and thus prevent all opportunity for corrupt practices.

The law does not permit parties to profit by such frauds, though they may not have participated in the fraud. The rule laid down by the text-writers is as follows:

"When fraud on the part of the officers of election is established, the poll will not be rejected, unless it shall prove to be impossible to purge it of the fraud. When the result at a poll, as shown by the returns, is false and fraudulent, and it is impossible to ascertain the actual vote from the other evidence in the case, the vote of such poll must be wholly rejected." Paine, Elect. § 499; McCrary, Elect. §§ 190, 192.

This rule is founded in good sense, and is sustained by the authorities. *Mann's Case,* 2 Phila. 320; *McKinney v. O'Connor,* 26 Tex. 5; *Knox Co. v. Davis,* 63 Ill. 405; *Van Amringe v. Taylor,* 108 N. C. 196 (12 S. E. Rep. 1005); *Heyfron v. Mahoney,* 9 Mont. 497 (24 Pac. Rep. 93); *Londoner v. People,* 15 Colo. 557 (26 Pac. Rep. 135); *Chamberlain v. Woodin* (Idaho), 23 Pac. Rep. 177; *Jones v. Glidewell,,* 53 Ark. 161 (13 S. W. Rep. 723); *Blue v. Peter,* 40 Kan. 701 (20 Pac. Rep. 442).

In *Mann's Case,* the law provided that no person should be permitted to vote whose name was not contained on the list of taxable inhabitants; but a large number of persons whose names were not upon the list were permitted to vote. Under the Michigan statute no voter is permitted to vote who exposes his ballot to the view of others, and under the averments in the replication in the present case 75 voters did so expose their ballots, which were

therefore illegally received.    The court in *Mann's Case* said:

"Where the conduct of election officers is such as to destroy the integrity of their returns, and to avoid their *prima facie* character, due and adequate proof must be produced of each vote relied on by the respondent."

In *Heyfron v. Mahoney*, 66 illegal votes were cast at one of the precincts, and the vote of the entire precinct was thrown out in consequence.

"Fraud does not invalidate the legal votes cast, but, by destroying the presumption of the correctness of the returns, it makes it necessary that any person who claims any benefit from the votes shall prove them; and, where no proof is offered, and the frauds are of such a character that the correct vote cannot be determined, the return of the precinct will be rejected."    6 Amer. & Eng. Enc. Law, 353.

In *Jones v. Glidewell*, the entire vote was rejected because certain voters were intimidated by being compelled either to show their ballots or be ostracised by others.

It is of far more consequence to the people of this State and to the stability of our form of government that these provisions should be held mandatory than is the fact that occasionally the will of the people may be defeated by adhering to them, and rejecting the entire precinct so tainted with fraud. Whatever may have been the rule under former election laws, it is evident that under this statute no voter can be compelled to remove the secrecy of his ballot, and state how he voted. If these provisions are held directory only, it follows that the intent of the people to pass a law to preserve the purity of elections is defeated, and the statute instead provides sure means to protect and cover up corruption and venality. If the averments of the replication are maintained by proof, it follows that the receiving of 13 votes of unregistered persons, and permitting persons to enter the booths with voters, contrary to law, tainted the vote of the whole precinct.

The charges made are so grave that we do not think it proper to determine the question upon the pleadings. The case must therefore be remanded to the circuit court for the county of Wayne for trial. The respondent will be allowed 20 days within which to amend his rejoinder and complete the issue. The case may then be noticed for trial by either party upon 10 days' notice, and be given preference over the other calendar causes.

The other Justices concurred.