ATTORNEY GENERAL, *ex rel.* McCALL, *v.* KIRBY.

ELECTIONS—MISCONDUCT OF INSPECTORS—THROWING OUT VOTE.

In determining the title to a county office, the vote of a township should be excluded, where it appears that in such township the mandatory provision of the election law requiring the official ballots to be kept in the custody of an inspector was violated by the appointment of an unofficial person as "instructor" to distribute the ballots, and allowing him access to the voters even after they had entered the booths, although the parties acted in good faith and it is not shown that voters were unduly influenced.

Error to Gratiot; Daboll, J. Submitted June 22, 1899. Decided July 5, 1899.

*Quo warranto* by Horace M. Oren, attorney general, on the relation of Archie McCall, against Julius B. Kirby, to determine the title to the office of prosecuting attorney for the county of Gratiot. From a judgment for respondent, relator brings error. Reversed.

The relator and respondent were candidates for the office of prosecuting attorney at the election held on November 8, 1898, in the county of Gratiot. The county board of canvassers returned that relator received 2,991 votes and the respondent 3,014. This is an information in the nature of a *quo warranto* to test the title to the

office.   The relator claims that the returns from the township of Elba should be thrown out.   If this were done, the relator is elected.   The illegality of the election in that township is based upon the following facts.   The following diagram shows the situation of the room where the election was held:

M is the entrance to the room.   I and J were gates for the entrance and exit of voters; I being the entrance and

J the exit. E, F, G, and H are the booths; L the table where the inspectors sat; K the place where the challengers sat. The voters entered at I, passed to the left, obtained their ballots from one Kerr, who kept the ballots on a box or table at D, then entered the booths, passed through, deposited their ballots at L, and made their exit at J. B is the room occupied by the inspectors and challengers. In addition to all the officers provided by the statute, the inspectors of election chose this Kerr as an instructor. The oaths of office appear in the record. Mr. Kerr, it appears, took the oath, a copy of which is in the record, but the blank for the designation of his office is not filled. The inspectors, after having the ballots marked as the law provides, gave them, as required, to Mr. Kerr, who took them over, and placed them on the box at D. He took them as wanted, meeting the inspectors at some point in the space marked C, between D and I. It was his custom to ask voters as they entered if they knew how to vote, and, if they desired instruction, he took the ballot, sometimes holding it against the wall, and gave instructions. He had free access to every voter who came in. It is clearly established that he talked with them while in the booths with the doors open, and himself standing in the door of the booth. He was, while talking with the electors, a good share of the time out of the sight of the inspectors and challengers. Several testified that they could hear him talking to the electors, but could not tell what he said. Several voters testified that he showed them on the ballot where to vote for respondent, if they desired to. There is no evidence of attempting to influence voters, unless this be so considered. No protest was made to the action of Kerr during the election, and it appears that Mr. Kerr had filled this position at other elections.

*Horace M. Oren*, Attorney General (*George P. Stone, John T. Mathews*, and *W. A. Bahlke*, of counsel), for appellant.

*Kelly S. Searl, Byron H. Sawyer*, and *W. A. Leet*, for appellee.

GRANT, C. J. (*after stating the facts*). Manifestly, the election law was wholly ignored in the appointment of Mr. Kerr, in intrusting the ballots to him, and permitting him to have free access to the electors after they had passed into the voting precinct, and into the booths themselves. It is urged that the inspectors of election acted in good faith, and supposed they had the right to appoint a man as an instructor of election. It is difficult to understand how intelligent men should reach this conclusion. The law makes no such provision, but makes it the clear duty of one inspector to keep possession of the ballots, and to hand them to the voters, after another inspector has opened the package, and still another has put his initials upon them. It is due to the members of the election board to say that there is no evidence that they acted from corrupt motives. If, however, this conduct can be sustained, and the plain provisions of the law ignored, rascals can very readily make the same plea, and it would be difficult to expose their rascality. These provisions of the law have been held mandatory. *Attorney General* v. *McQuade*, 94 Mich. 439; *Attorney General* v. *Stillson*, 108 Mich. 419. By a reference to the latter case, on page 421, it will appear that the interpreter, an officer provided by the act, was stationed very near to, and in plain sight of, the inspectors, and talked with the voters, as they came in, in a foreign language. It does not appear that there was more evidence of fraud in that case than in this. That case differs from this only in two particulars: *First*, that the conversation between the interpreter and the voters was not in the English language, as it was in this; and, *second*, that the "instructor," as he was called in this case, had a better opportunity to secretly influence electors than did the interpreter in that. If these provisions are mandatory,—and we have so held,—they cannot be evaded by showing that the parties acted in good faith and that voters were not influenced. The law was intended to prevent just such transactions and chances to influence voters, and courts cannot fritter them away by

permitting jurors to find that there was no fraud and that voters were not unduly influenced.

The judgment must be set aside, and one entered for the relator.

The other Justices concurred.