FRAZER, *ex rel.* DE GAW, *v.* FITZSIMMONS

ELECTIONS — BALLOTS — DISTRIBUTION—INSPECTOR'S INITIALS—INDORSEMENT IN PENCIL—MANDATORY PROVISIONS.

Sections 36 and 44 of the Detroit election law, which provide, respectively, that the inspectors of election shall write their initials in ink on each ballot, and that no ballot shall be distributed by any person other than an inspector, are violated where the clerk of a board of inspectors, not himself an inspector, indorses ballots with his initials and distributes them himself, where an inspector indorses ballots with an abbreviation of his given name, instead of with the initials of each of his names, and where indorsements are made with Prussian blue pencil instead of with ink; but whether such provisions are mandatory, so that by their violation the ballots affected are rendered void,— *quœre.*

Error to Wayne; Donovan, J.    Submitted June 7, 1900.    Decided June 26, 1900.

*Quo warranto* proceedings by Allan H. Frazer, prosecuting attorney of Wayne county, on the relation of Fred E. De Gaw, against Thomas W. Fitzsimmons, to try the

title to the office of justice of the peace. From a judgment for respondent, relator brings error. Reversed, and judgment of ouster entered.

*John J. Speed* (*Charles D. Joslyn*, of counsel), for appellant.

*Charles W. Casgrain* (*Jasper C. Gates*, of counsel), for appellee.

HOOKER, J. The relator, De Gaw, instituted *quo warranto* proceedings to try the right of Fitzsimmons to the office of justice of the peace, to which each claims to have been elected at the election in the fall of 1898 in the city of Detroit. The cause was heard by the circuit judge without a jury, and the court found that the respondent received, and was elected by, a majority of the votes cast, and rendered judgment of not guilty. The relator brought the cause here by writ of error.

At the commencement of the trial, the court, by consent of the parties, appointed auditors, who opened the ballot-boxes of those precincts in which the correctness of the count was questioned. They tabulated the undisputed ballots, and marked and returned to the court such ballots as were questioned, with the result of their count. The questions before us are (1) whether the entire vote in certain precincts should have been excluded; (2) whether certain rejected ballots in different precincts should have been counted for the relator; (3) whether other ballots counted for the respondent should have been rejected. Counsel have also discussed some ballots alleged to have been erroneously counted for relator.

We have inspected the disputed ballots, and the tabulation. which follows will serve to explain the result reached by us in relation to them. The finding of the circuit judge does not give the total vote of each party, or the plurality received by either. These are deducible only from the various findings, and, as we understand them, the court counted for the relator 18,255, and for respondent 18,260, ballots. We are of the opinion that to

these should be added some ballots improperly rejected (13 for relator and 7 for the respondent), and there should be deducted some that were improperly counted (viz., 5 for the relator and 12 for the respondent). This is exclusive of the 22 disputed ballots in the Fifth district of the Twelfth ward, 4 of which should be deducted from the respondent, because we are compelled to say, under the decision of *Attorney General* v. *Glaser*, 102 Mich. 405 (61 N. W. 648), that they bear distinguishing marks. It is urged with plausibility that the other 18 ballots are subject to the same rule, but we find it unnecessary to determine as to them. As already said, we compile the following table of votes counted, from the finding of the circuit judge:

|  | De Gaw. | Fitz-simmons. |
|---|---|---|
| Reported by auditors | 16,786 | 16,671 |
| Fifth district of Twelfth ward, undisputed | 91 | 158 |
| Fifth district of Twelfth ward, disputed, but counted | 4 | 18 |
| Ballots initialed in blue pencil, counted | 699 | 906 |
| Bromley ballots, Second district, Fourteenth ward | 158 | 120 |
| Bleil ballots, Second district, Fourteenth ward | 84 | 56 |
| Bridgman ballots, Seventh district, Sixth ward | 216 | 180 |
| Theo. ballots | 193 | 114 |
| Of disputed ballots | 24 | 37 |
|  | 18,255 | 18,260 |

We make changes in the above as follows:

|  | De Gaw. | Fitz-simmons. |
|---|---|---|
| Disputed ballots erroneously rejected | 13 | 7 |
| Add | 18,255 | 18,260 |
|  | 18,268 | 18,267 |
| Erroneously counted, deduct | 5 | 12 |
|  | 18,263 | 18,255 |
| From 22 ballots, Fifth district, Twelfth ward, reject and deduct | | 4 |
|  | 18,263 | 18,251 |

124 MICH.—33.

The table shows three classes of ballots that were questioned, of which the relator has a majority, viz., those designated "Bromley," "Bridgman," and "Theo." Messrs. Bromley and Bridgman were clerks of the respective boards of inspectors. Theodore E. Vitalius was an inspector. The ballots were initialed by each of these persons in his respective district, by order of the board of inspectors. Bridgman wrote his own initials, and handed some of the ballots to the voters, and Vitalius wrote "Theo.," instead of the first letters of each of his names. The circuit judge found that these things were done in good faith, and that no injury resulted to either candidate through the departure from the letter of the statute. Should these ballots be deducted, it would reduce relator's aggregate 153 votes. Upon the other hand, there were many ballots initialed in blue pencil. The court took proof tending to show that the material of which these pencils were made was Prussian blue and clay, and that the former, if dissolved in water, would make ink, and held that this was a substantial compliance with the law. Of these ballots the respondent received a plurality of 207, and, if thrown out, that number would be deducted from his aggregate. The law requires that ballots shall be initialed by an inspector, and with his own initials, in ink, and be handed to the voters by him. Each party maintains that these provisions are mandatory in part and directory in part. Relator will be benefited by the exclusion of the ballots initialed in blue pencil; respondent, by the exclusion of the others. To our mind, the law is mandatory as to all of these requirements, or directory as to all. At all events, if it is to be held mandatory as to the requirement that only inspectors can handle the ballots, it must be so construed as to the requirement that they be initialed with ink. The blue pencil was not, in effect, ink. Not only does the proof fail to show that clay is an ingredient of the ink made from Prussian blue, but there was no proof that water was used in the application of the initials, and an experiment shows that common

India rubber will efface the blue initials upon these ballots. Taking the view that all of these provisions are to be treated alike, it becomes unnecessary to decide whether they are mandatory or not, because the result would be the same if all these votes were excluded as it is under the count made, as the respondent would lose the difference between 207 votes and 153 votes; and, as this would be still further increased if the vote of the Fifth district of the Twelfth ward were to be excluded, it is unnecessary to discuss the questions relating to those votes.

We must therefore reverse the judgment of the circuit court, and, as the finding is conclusive of the questions involved, we may properly enter a judgment of ouster here. It will be so ordered, with costs of both courts to the relator.

The other Justices concurred.