PEOPLE, *ex rel.* ANDERSON, *v.* RINEHART.

1. ELECTIONS—INSPECTOR'S DUTY—STATUTES.
   Failure of an election inspector to write his initials on the lower left-hand corner of the ballot, under Act No. 55, Pub. Acts 1905, violates a mandatory duty which is not performed by initialing the ballots on the perforated corners that are torn off, and requires the rejection of the defective ballots.

2. CONSTITUTIONAL LAW—ELECTIONS—PUBLIC OFFICERS.
   Act No. 55, Pub. Acts 1905, making provision for initialing ballots and rejecting those improperly marked, is constitutional.

Error to Cass; Coolidge, J., presiding. Submitted April 14, 1910. (Docket No. 111.) Decided June 6, 1910.

*Quo warranto* proceedings by the people of the State of Michigan, on the relation of Robert J. Anderson, against Carleton W. Rinehart to try the title to the office of county clerk. A judgment for respondent is reviewed by relator on writ of error. Reversed, and judgment of ouster entered.

*Thomas J. Bresnahan* and *Coy W. Hendryx* (*C. S. Reilley*, of counsel), for appellant.

*Smith & Lyle*, for appellee.

HOOKER, J. The prosecuting attorney for the county of Cass filed an information on behalf of Anderson against Rinehart to try the title of these persons to the office of county clerk in said county; Rinehart being in possession under a certificate of election.

The case must turn upon the disposition to be made of the ballots cast in the township of Calvin, all of which should be excluded or all counted. If excluded, relator will have a majority of 88 in the county. If counted, re-

spondent was elected by 137 votes. The alleged defect in the ballots is that the initials of the inspector were placed on the perforated corners of the ballots, and were all torn off by the inspector after he received them from the electors and before depositing them in the box. The statute involved in this case is section 22, Act No. 55, Pub. Acts 1905:

"SEC. 22. At the opening of the polls, after the organization of, and in the presence of the board of inspectors, one of the inspectors shall open the packages of ballots in such a manner as to preserve the seal intact. He shall then deliver to one of the inspectors, to be designated by the board, fifty of the ballots, and shall place the pencils for marking the ballots in the booths. The inspector so designated shall at once proceed to write his initials in ink on the lower left-hand corner of the back of each of said ballots, but not upon the perforated corner, in his ordinary handwriting, and without any distinguishing mark of any kind. As each successive voter calls for a ballot, another one of the inspectors shall deliver to him the first signed of the fifty ballots, and as the supply of ballots in the hands of the inspectors shall decrease, additional ballots shall be signed by the same inspector, so that at least twenty-five ballots so signed shall be at all times in the hands of the inspector delivering the ballots to the elector."

It is contended on behalf of the respondent that the provision regarding initials should be held to be directory, rather than mandatory, and that a failure to strictly comply with it would not require the exclusion of the informal ballots, and we are cited to the case of *Horning* v. *Board of Canvassers of Saginaw Co.*, 119 Mich. 51 (77 N. W. 446), in support of the claim. Under the law in force at that time, the poll clerks were required to write their initials in ink on the upper left-hand corner of the back of each of the ballots, etc. Another section required that "any ballot which is not indorsed with the initials of the poll clerks as provided in this act shall be void and shall not be counted." We held in that case that the ballots voted (all being indorsed in a different corner) should be

counted.   This case was decided in December, 1898, under the act of 1891 (Act No. 190, Pub. Acts 1891, 1 Comp. Laws, § 3612, *et seq.*).   Several other provisions of that act have been held mandatory and informal ballots rejected.   Thus in *Attorney General* v. *McQuade*, 94 Mich. 439 (53 N. W. 944), the noncompliance with the requirement that the voter must go alone into the booth and there prepare his ballot concealed from the view of all persons, and fold it so that the face should be concealed, and the initials exposed to view and non-compliance with the provisions relating to assistance to illiterate persons in marking their ballots, made the exclusion of ballots necessary.

In *Attorney General* v. *May*, 99 Mich. 539 (58 N. W. 483, 25 L. R. A. 325), we held the same where assistance was rendered to a voter, who had not previously taken the statutory oath.   In *Attorney General* v. *Stillson*, 108 Mich. 419 (66 N. W. 388), we held that the vote of an entire township must be excluded for the reason that an interpreter duly sworn was allowed to remain within the railing at a voting precinct, and to mingle and talk freely with voters after receiving and before marking their ballots, such voters not having requested the assistance of an interpreter.   Again, in *Attorney General* v. *Kirby*, 120 Mich. 592 (79 N. W. 1009), the vote of a township was excluded because an unofficial person was appointed "instructor," to distribute ballots, who was allowed access to voters even after they had entered the booth, and this was held notwithstanding the fact that the parties all acted in good faith and the absence of proof that any one was unduly influenced.   See, also, *De Gaw* v. *Fitzsimmons*, 124 Mich. 511 (83 N. W. 282).   Subsequently, and in 1905, and presumably with the full knowledge of the *Horning Case*, the legislature amended the act by expressly prohibiting the use of the perforated corner for initials.   In view of these cases, and the subsequent legislation, we must hold the provision mandatory, and the vote void.

It is urged that voters should not be disfranchised by the carelessness or fraud of inspectors, and we are cited to many cases where courts have refused to exclude votes for election irregularities. Courts are always reluctant to deprive electors of their votes, or to do violence to the expressed will of the public, but these regulations are made in furtherance of a design to protect electors in the exercise of their electoral privileges. In the *Case of McQuade, supra,* it was said by Mr. Justice GRANT:

"These provisions of the law must be held mandatory, or else the purpose of the law is defeated, and the opportunities for fraud are increased rather than diminished. If an inspector or other person be permitted to enter the booths with the voters, the danger is far greater than under the old system, where there was some opportunity to see and detect fraud. Under this practice, venal voting could be readily accomplished. The law is designed to secure absolute secrecy to the elector, and thus prevent all opportunity for corrupt practices. The law does not permit parties to profit by such frauds, though they may not have participated in the fraud. The rule laid down by the text writers is as follows:

"'When fraud on the part of the officers of election is established, the poll will not be rejected, unless it shall prove to be impossible to purge it of the fraud. When the result of a poll, as shown by the returns, is false and fraudulent, and it is impossible to ascertain the actual vote from the other evidence in the case, the vote of such poll must be wholly rejected.' Paine on Elections, § 499; McCrary on Elections, §§ 190, 192.

"This rule is founded in good sense, and is sustained by the authorities."

We said in the *Case of Stillson, supra:*

"We have frequently held that electors are not to be deprived of the result of their votes by the mere mistakes of election officers, when such mistakes do not indicate that the result has been changed thereby, and many things may occur that can be treated as irregularities. See *People* v. *Avery,* 102 Mich. 572 (61 N. W. 4), and authorities cited. On the other hand, where fraud appears upon the part of the inspectors, the voter must sometimes be deprived of his vote. *Attorney General* v.

*McQuade,* 94 Mich. 439 (53 N. W. 944). And this must always be the case where mandatory provisions are disregarded, if the result would be thereby changed."

Continuing upon the subject of the constitutionality of the law which is attacked in this case as it was there, we said much in the last-mentioned case that can as well be read there as to repeat it here. We held these laws within the powers expressly conferred by the Constitution, although they might require some sacrifice by the individual for the public good. The statute expressly provides that such ballots as these shall be neither placed in the box nor counted, and we have no alternative but to apply the law.

The judgment of the circuit court is reversed, and a judgment of ouster entered against the respondent, and in favor of the relator.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.