EL DORADO *v.* JACOBS.

Opinion delivered May 23, 1927.

1. MUNICIPAL CORPORATIONS—AUTHORITY TO ISSUE BONDS.—Constitutional Amendment No. 15, giving to cities of the first and second class power to issue bonds for certain purposes with the consent of a majority of qualified electors voting on the question at election, *held* sufficiently definite to be enforceable.

2. MUNICIPAL CORPORATIONS—VALIDITY OF BOND ELECTION.—The fact that the usual number of voters did not vote at a bond election authorized by Constitutional Amendment No. 15 did not avoid the election, in the absence of a showing of fraud; the amendment specifically providing for determination of the result by a majority of those voting.

3. MUNICIPAL CORPORATIONS—VALIDITY OF BOND ELECTION.—An election to determine whether city bonds should be issued, held in substantial compliance with the requirements of Amendment No. 15, and an ordinance enacted in conformity therewith, *held* not invalidated by irregularities, not affecting the result in the appointment of election officers.

4. MUNICIPAL CORPORATIONS—ABSENCE FROM ELECTION OF REGULAR JUDGES.—The fact that judges appointed by the election commissioners did not appear and hold an election with reference to the issuance of city bonds, *held* not to invalidate an election, in the absence of a showing that the persons holding the election were not elected to fill vacancies in the manner provided by Crawford & Moses' Dig. § 3729, or that votes were not honestly cast and counted, or that any attempt was made to interfere with voters' freedom of action.

5. MUNICIPAL CORPORATIONS—VALIDITY OF BOND ELECTION.—A municipal bond election was not invalidated by holding the election in one

precinct at an unauthorized place 200 feet from the usual polling place on the same street because the election judges could not have access to the latter place.

6. MUNICIPAL CORPORATIONS—VALIDITY OF BOND ELECTION.—A municipal bond election was not invalidated because the polls were not open as early as permissible under the statute, where every voter was given an opportunity to vote.

7. MUNICIPAL CORPORATIONS—VALIDITY OF BOND ELECTION.—A municipal bond election was not invalidated because private booths were not erected in polling places as provided by statute, where each voter was given opportunity to retire to a part of the room where he could vote in secrecy, where no electioneering went on at the polling places, and where no attempt was made by persons holding the election to influence voters.

8. MUNICIPAL CORPORATIONS—APPOINTMENT OF ELECTION OFFICERS.— Appointment by the election judges of officers to serve them at polling places in the city bond election, on the sheriff's failure to appoint deputies for such purpose, *held* a substantial compliance with the statute, especially where no attempt was made to influence voters.

9. MUNICIPAL CORPORATIONS—REQUIREMENT AS TO READING OF RESOLUTION—WAIVER.—Adoption of a resolution by a unanimous vote of all members of a city council dispenses with the requirement of Crawford & Moses' Dig., § 7502, that all bills and ordinances of general and permanent nature be fully and distinctly read on three different days.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

*J. G. Ragsdale* and *Powell, Smead & Knox,* for appellant.

*Stewart & Oliver,* for appellee.

HART, C. J. J. F. Jacobs, a citizen, taxpayer and owner of real property in the city of El Dorado, brought this suit in equity against said city and the mayor and members of the common council thereof, to enjoin them from issuing or selling bonds or making any contract towards the purchase and erection of a city hall. The chancellor found the issues in favor of the plaintiff, and a decree was entered of record in accordance with the prayer of his complaint. To reverse that decree this appeal has been prosecuted.

The record shows that, at the general election held on October 5, 1926, Amendment No. 15, giving cities of the first and second class the power to issue bonds for certain puruposes upon certain conditions, was adopted. On January 5, 1927, pursuant to the provision of an ordinance to that effect, an election was duly held in the city of El Dorado, which is a city of the first class, to determine whether or not bonds should be issued for the purchase of a site and the erection of a city hall. A great majority of the votes cast at said election were in favor of issuing the bonds for the construction of the city hall.

The chancellor held that Amendment No. 15 was illegal and inoperative. No valid reason is assigned by counsel for the court so holding, and none can be perceived by us. It cannot in any sense be said that the amendment is too indefinite to be capable of enforcement. It provides that cities of the first and second class may issue, by and with the consent of a majority of the qualified electors of said municipality voting on the question at an election held for the purpose, bonds in sums and for the purposes approved by such majority at such election. The purpose of the election in question was for the purchase of a site and the construction of a city hall. Such purpose is expressly provided for in the amendment. It further provides that no bonds issued under the authority of the amendment shall bear a greater rate of interest than six per cent. per annum. The section also provides that such bonds must be sold at public sale after twenty days' advertisement in some newspaper of a *bona fide* circulation in the municipality issuing the bonds. Provision is made for the levy and collection of a special tax, not to exceed five mills on the dollar, in addition to the legal rate permitted, for the purpose of paying said bonds and interest thereon. The amendment prevents such municipal corporations from granting financial aid towards the construction of railroads or other private enterprises, and specifically provides that no money raised by the sale of bonds shall ever

be used for any other or different purpose than that specified.

Another section provides that the election shall be held at such time as the city council may designate by ordinance, which shall specifically state the purpose for which the bonds are to be issued, the total amount of the issue, the dates of maturity and the date of election, so that it shall not occur earlier than thirty days after the passage of the ordinance. It further provides that said election shall be held and conducted and the votes thereof counted and the result thereof determined under the law and in the manner now or hereafter provided for municipal elections, so far as the same may be applicable, except as herein otherwise provided. Provision is made for giving notice of the election by advertisement, and only qualified voters have the right to vote at said election.

An ordinance was passed by the city in conformity with the provisions of the amendment, and the election was held on the 5th day of January, 1927, at the voting place in each of the four wards of the city of El Dorado. As we have already seen, a great majority of those voting at the election voted for the issuance of bonds for the purchase of a site and the construction of a city hall, and the provisions of the law in regard to holding and conducting said election were substantially complied with.

Complaint is made that the usual number of voters did not appear at the polls and vote at said election. No proof was introduced, however, tending to show that any fraud was perpetrated in conducting the election either in casting the ballots, preparing the returns or determining the results of the election. The mere fact that the usual number of voters did not appear and vote at the election cannot have the effect to avoid it. The amendment itself specifically provides that the result is to be determined by the majority of those voting on the question at the election and not by the majority of those who might have participated in the election.

Complaint is made of several irregularities in holding the election. It is well settled, however, that election returns should not be rejected for any irregularity in the appointment of the officers of election, where it does not appear that the irregularity affected the result of the election. 20 C. J., page 90, and case-note. In *State ex rel* v. *Taylor,* 108 N. C. 196, 12 S. E. 1005, 12 L. R. A. 202, 23 Am. St. Rep. 51, it was held that it is essential to the validity of an election that it shall be held under some proper authority, and conducted substantially in the manner prescribed by law. In the case at bar the record shows that all the requirements as to notice and other matters required by the amendment and by the ordinance enacted in conformity with the provisions of the amendment were substantially complied with. The election was held on the day advertised and in each of the four wards of the city of El Dorado.

Complaint is made that none of the officers appointed by the election commissioners as judges of the election appeared and held the election. So far as the record discloses, the regular election officers did not appear, and no election could have been held unless substitute judges took their places. Section 3729 of Crawford & Moses' Digest provides the manner of supplying the vacancies where the regular election judges shall be absent at the time fixed for the opening of the polls. Here, no attempt is made to show that the persons holding the election were not elected to fill the vacancies caused by the absence of the regular judges, and no attempt is made to show that the votes were not honestly cast and counted or that any attempt was made to interfere with the freedom of action on the part of the voters.

Again, it is insisted that in one of the precincts the election was held at an unauthorized place. The election in that precinct was held at a polling place about two hundred feet distant from the building in which the elections for that precinct or ward were usually held. The changed polling place was on the same street of the city,

and was rendered necessary because the election judges could not have access to the regular polling place.

It is next contended that the election was invalid because the polls were not open as early as they might have been under statute. The delay in opening the polls may have been caused by the absence of the regular election judges and the necessity of filling the vacancies caused by their absence. In any event, no attempt was made to show that any person was prevented from voting on this account. Each of the polls was in a house on one of the streets of the city, and every voter was given an opportunity to vote at the election.

It is next insisted that private booths were not erected in the polling places as provided by the statute. Only one issue was to be voted on at the election, and the undisputed evidence shows that each voter was given an opportunity to retire to a part of the room where he could vote in secrecy and where no one could see how he marked his ballot. There was no electioneering going on at the polling places, and no attempt was made by those holding the election to influence the voters in any way.

It is next insisted that the sheriff did not appoint deputies to attend and serve the election judges at the polling places. This defect was supplied by the election judges appointing an officer for that purpose, and this constituted a substantial compliance with the statute. This is especially true when we consider that no attempt was made by any one to influence the voters.

In short, there is no evidence in the record of any obstruction or hindrance caused by those holding the election which in anywise interfered with the expression of the voters in casting their votes according to their own free will, and there is nothing, as a consequence, which prevented a fair election.

The facts with regard to the passage of the ordinance bring the action of the council within the rule announced in *Young* v. *Gurdon,* 169 Ark. 399, 275 S. W.

890. In that case it was held that, under Crawford & Moses' Digest, requiring that "all bills and ordinances of a general and permanent nature shall be fully and distinctly read on three different days unless two-thirds of the members composing the council shall dispense with the rule," the adoption of a resolution by unanimous vote of all the members of the council dispenses with such requirement.

Other matters are urged upon us for a reversal of the decree, but we do not deem them of sufficient importance to require a separate discussion and review. Suffice it to say that we have carefully considered the briefs of counsel and are of the opinion, for the reasons above given, that the decree of the chancellor was erroneous. It will therefore be reversed, and the cause will be remanded with directions to the chancery court to dismiss the complaint of the plaintiff for want of equity. It is so ordered.