STATE OF OREGON, ex rel. J. H. Mahoney, Respondent, v. J. D. McKINNON, E. J. PAGE, J. H. SHUPE, and GEORGE R. SACRY, Appellants.

Municipal Corporation—Board of Trustees—Jurisdiction in Election Contest not Exclusive.—The provision in a city charter that the board of trustees "shall judge of the qualifications and election of their own members," does not oust the jurisdiction of the circuit court over usurpations of such office. It will still entertain an action under section 354 of the civil code against a person unlawfully exercising the office of trustee of such city, and the provision in the city charter will be held as affording merely a preliminary or cumulative tribunal.

A Ballot Written or Printed on Colored Paper is Illegal, and should be rejected at any election held under the general laws of this state.

In Case of a Tie there is no Election.—Where, at an election held under the laws of this state, two or more candidates receive the highest and an equal number of votes for the same office, neither is elected, nor can either rightfully exercise the duties of such office until the matter has been decided by lot, and he has been declared duly elected in the manner provided in the code.

Appeal from Douglas County. The facts are stated in the opinion.

*Herman & Ball*, for appellants:

In order to put the charter of the city of Oakland in successful operation, the act of incorporation has wisely provided, that the inspectors of the first election shall give

certificates of election to the successful candidates; and that the trustees thus elected shall judge of the qualification and election of their own members, and decide contested elections of all town officers; and their action is conclusive against this proceeding. (Session Laws 1878, 121–125; *The Commonwealth, ex rel. McCurdy,* v. *Leach,* 44 Penn., sec. 332; *The Commonwealth, ex rel. Yard,* v. *Messer,* 44 Penn., sec. 341–343.)

If the trustees under the charter are not the sole judges of the election and qualification of their own members, and the court has jurisdiction to inquire into the legality of their appointment, it will determine what was the will of the legal voters as manifest by their ballots; and the colored ballot was cast by a qualified elector and received by the inspectors without objection or protest, and it should be counted. (Cooley's Const. Lim. 74, 75, 605, 618, 624; *Kent* v. *Day,* 1 Or. 130; *The People* v. *Cook,* 14 Barb. 259, 293, 294; *The People, ex rel. Brewster and Jones,* v. *Kilduff,* 15 Ill. 500; Civ. Code, 572, sec. 30.)

The finding that A. C. Young received a greater number of votes than each of the appellants is against the admitted facts by the pleadings; and the court could not decide upon his right to the office. (Civ. Code, p. 184, sec. 354; p. 185 sec. 358.)

While Young may have held a constructive residence within the corporate limits, he was not an actual resident of the town during the six months next preceding the election, and was not qualified to take the office. (Session Laws 1878, 122.)

*Wm. R. Willis,* for respondents:

The irregularities found in the third finding of facts herein are sufficient to avoid this election. (Session Laws 1878, p. 123, sec. 4; Civ. Code, p. 569, sec. 18; Id. p. 570, sec. 22.) But if the election be held regular, then J. D. McKinnon and Alva Pike were the only defendants who received a majority of the votes cast. (See fourth finding of fact.) A candidate is not elected if he receives no more votes than others. (Code, p. 573, secs. 35 and 36; *People* v.

*Moliter*, 23 Mich. 341.) If A. C. Young was not eligible, then the office was vacant. (Dillon on Municipal Corp., sec. 135.) Or if he failed to qualify. (Code, p. 576, sec. 48, sub. 6.)

It follows, then, that three of the defendants, E. J. Page, J. H. Shupe, and George R. Sacry, received the highest and an equal number of votes for the office of trustee, and but two trustees to be elected—three of the five having been elected—so neither of them was elected. It appears on the face of this answer that defendants are claiming to hold their office by virtue of the same election and certificate of the same inspectors, as they claimed when the judgment of ouster was rendered against them. The inspectors of this election had no right to decide a tie vote by lot. (*Hannock* v. *Barnes*, 4 Bush. Ky. 390; Sess. Laws, 1878, p. 123, sec. 4; Id. p. 125, sec. 12.)

The said inspectors having canvassed the votes and given certificates of election, have exhausted their power over the subject, and can not afterwards reverse their decision by making a different determination. (*Hadley* v. *Mayor*, 33 N. Y. 603, 606; *Clark* v. *Buchanan*, 2 Minn. 298, 300, 301, 302; *The People* v. *Supervisors of Greene*, 12 Barb. 217, 221, 222.) It appears by the pleadings herein that the inspectors had long before this sitting canvassed the vote and issued certificates. Disobedience of this judgment is a contempt. (Code, p. 241, sec. 640, sub. 5.)

By the Court, Watson, J.:

It appears from the transcript that this was an action commenced in the circuit court for Douglas county, upon the relation of J. H. Mahoney, for usurpation of office, under section 354 of the Civil Code.

The amended complaint alleges: That the plaintiff, James H. Mahoney, private party, is a resident voter and taxpayer in the city of Oakland, Douglas county, Oregon; that on the fourteenth day of December, 1878, in Douglas county, Oregon, the defendants, without any legal right, usurped and intruded into the office of trustees of the city of Oakland, a public corporation created by the authority

of this state, and still unlawfully hold and exercise the same, and prays judgment that defendants are not entitled to the said office, and that they be ousted therefrom, and for plaintiff's costs and disbursements in this action. The complaint is verified by the relator.

The answer of the defendants denies specifically each material allegation in the complaint, except the due incorporation of the city of Oakland by state authority, and alleges: The passage and approval of the act of incorporation, October 17, 1878; the provisions in said act for the election of five trustees and other city officers; their election as trustees under the provisions thereof, on November 4, 1878, by receiving a higher number of votes than any other candidates; the receipt of certificates of election from the inspectors appointed by said act; and their subsequent qualification for and entry upon the duties of said office of trustees of said city, under and by authority of their said election, December 14, 1878.

The replication denies the conduct of said election according to the laws of Oregon, and alleges many instances of irregularity. Denies that, at the said election, any of the defendants, except J. D. McKinnon and Alva Pike, received a higher number of votes for said office of trustee than any other candidate thereat; and alleges that A. C. Young, E. J. Page, John H. Shupe, and John R. Sacry, as counted, received each an equal number of votes for said office; and denies that it is under and in pursuance of any election or qualification that defendants exercise the office of trustee, or that they have any lawful right so to do.

By the consent of parties, made in open court, and entered on the journal, trial by jury was waived, and the issues of fact as well as of law, were tried by the court at its May term, 1879. After hearing the evidence, the court, on July 14, 1879, and during the term, filed its finding of fact and conclusions of law, in writing, as provided in section 216 of the Civil Code. The findings, some nine in number, are quite lengthy, but in substance: That an election for trustees and other city officers was held in the city of Oakland, Oregon, on the first Monday in November,

1878, and was, in all respects, conducted in accordance with the laws of Oregon, with the exception of certain irregularities, particularly set forth in the "third finding," which did not affect the result or render the election invalid, and occurred wholly through mistake; that during the election one ballot was received under protest, the name of the voter written upon it, and placed in the ballot box; also one ballot, written on colored paper, was received and placed in the ballot-box.

After the close of the election, and before the result was declared, both these ballots were taken out by the inspectors and rejected from the count. The first, on the ground of the voter's want of qualifications; the second, for not conforming to the statute, which requires the ballot to be "written or printed on plain white paper." That the persons voted for on the colored ballot were J. D. McKinnon, Alva Pike, E. J. Page, John H. Shupe, and Geo. R. Sacry. That after the close of the count, the inspectors declared the result to be that J. D. McKinnon had received fifty-one votes; E. J. Page, twenty-seven votes; Alva Pike, fifty-three votes; John H. Shupe, twenty-seven votes; George R. Sacry, twenty-seven votes; and A. C. Young, twenty-eight votes. That after the result of the election was declared, it being claimed that A. C. Young was ineligible, he formally withdrew his name as a candidate, and the inspectors thereupon issued to the defendants the certificates of election alleged in the answer, and that it was under and in pursuance of said election and qualification the defendants exercised the office of trustees of the city of Oakland.

The conclusions of law filed by the court were in effect: That the irregularities found did not invalidate the election; that said defendants J. D. McKinnon and Albert Pike were duly elected, and rightfully exercise the office of trustees of the city of Oakland; that the two ballots were rightly rejected by the inspectors; that A. C. Young was duly elected at said election to the office of trustee of the city of Oakland; that neither of the defendants E. J. Page, John H. Shupe, or George R. Sacry was elected to said office; that defendants J. D. McKinnon and Alva Pike are enti-

32

tled to judgment; that they are not guilty of usurping or intruding into said office, and for their costs and disbursements, and that plaintiffs are entitled to judgment against the defendants E. J. Page, John H. Shupe, and George R. Sacry; that they are guilty of unlawfully holding and exercising the office of trustees of the city of Oakland, and that they be excluded therefrom, and for costs and disbursements. Judgment was rendered accordingly, but not entered until August 1, 1879.

From this judgment, the defendants John H. Shupe, E. J. Page, and George R. Sacry bring this appeal.

In the notice of appeal several grounds of errors are stated, out of which many questions arise. We shall consider such only as are deemed important to a proper decision of the case.

The appellants claim that under section five of the act of the legislative assembly incorporating the city of Oakland, the board of trustees has exclusive jurisdiction over all questions touching the election and qualifications of their own members, and consequently the circuit court erred in entertaining this action.

The portion of section five relied on by appellants to sustain this proposition, is as follows: "Sec. 5. That the board of trustees shall elect a president, keep a record of their proceedings, and meet at stated times, and at such other as the president shall appoint. They shall judge of the qualification and election of their own members, and decide contested elections of all town officers." (Session Laws 1878, page 123.)

The authorities upon the effect of such provisions in city charters are conflicting, but the weight of authority is against the proposition contended for appellants. In Pennsylvania, it was held in *Commonwealth, ex rel. McCurdy,* v. *Leach,* 44 Penn. St. 322, and *Commonwealth, ex rel. Messer,* Id. 341, that a similar provision in the charter of Philadelphia, excluded the jurisdiction of the courts; and the same doctrine is held in *Peabody* v. *School Committee of Boston,* 115 Mass. 383. The decisions in these cases are evidently based upon the seeming analogy between those

bodies which, under city government, are commonly empowered to pass such ordinances as the public needs or interests of the city may require, and the respective houses, constituting the state and national legislatures, and the similarity of the words used in the city charters and state and national constitutions, in defining the powers of these respective bodies, to decide upon questions concerning the election and qualifications of their members.

In the more recent case of the *Commonwealth* v. *Allen*, 70 Penn. St. 465, this asserted analogy is ably refuted, and propositions announced, if not a decision made, in evident opposition to the doctrine laid down in the earlier Pennsylvania cases above cited. In rendering the decision, the court says: "The right of this court to issue the writ of *quo warranto* to determine questions of usurpation and forfeiture of office, in a public corporation, can not be questioned."

But the true principle is to first ascertain the intention of the legislature in the particular case, and then follow it; and the great preponderance of the authorities hold, "that the jurisdiction of the courts remains in such cases, unless it appears with unequivocal certainty that the legislature intended to take it away; and that language" (like that quoted above from the Oakland city charter) "will not have that effect, but be construed to afford a primary or cumulative tribunal only, and not an exclusive one." (1 Dillon on Corporations, sec. 141, and cases cited in note 2.)

*People* v. *Hall*, page 479 of the Reporter for April, 1880, decided by the New York court of appeals, is to the same effect, and contains an exhaustive and very able discussion of the whole subject. In this view we fully coincide, both on the ground of authority and sound reason.

Appellants make no objection to the action of the inspectors in rejecting the ballot for disqualification of the voter; but claim that the court below erred in holding that the inspectors rightly rejected the colored ballot. The authorities cited to sustain this proposition are not in point. They, perhaps, sufficiently illustrate the principle governing the construction of statutes defining the duties of public officers

as to their being mandatory or directory merely, and the reluctance of the courts to construe statutes providing the manner of elections, so as to defeat the public will as expressed through the ballot-box; but disclose no instance where a voter has been accorded the privilege of disregarding a plain provision of law, intended to promote the purity and secure the independence of elections, even in depositing his vote.

Section 30, page 572 of the code, provides that "all ballots used at any election in this state shall be written or printed on plain white paper, without any mark or designation being placed thereon, whereby the same may be known or designated."

The voter in this instance is conclusively presumed to have had knowledge of this requirement, and to have had it in his power to comply with it, by using a proper ballot. It was a matter entirely under his own control, and if he chose to disregard the law, he can not complain, if the consequence was that his vote was lost.

It may be contended that, as the protection of the voter is the object of the law, he might waive it. But this practice might be carried to such an extent as to expose others and deprive them of the benefits of that secrecy which the law has endeavored to throw around the ballot-box. (*Commonwealth* v. *Wallper*, S. & R. 29, cited in American Law of Elections, secs. 401 and 402.)

The correct principle is announced in the case of *Kerr* v. *Rhodes*, 46 Cal. 398, which holds "that a ballot cast by an elector in good faith should not be rejected for failure to comply with the law in matters over which the elector had no control, such as the exact size of the ticket, the precise quality of the paper, or particular character of type or heading used, where the law has provisions to that effect; but if the elector willfully neglect to comply with requirements over which he has control, such as seeing that his ballot when delivered is not so marked that it may be identified, the ballot should be rejected." (American Law of Elections, sec. 403.)

The case under consideration is clearly within the princi-

ple of the case just cited, and as clearly without the statutory requirements contained in the section of the code above quoted, and we think the colored ballot was properly rejected.

It is claimed that the court below erred in finding that A. C. Young was elected as one of the trustees of the city of Oakland. Young not being a party to the action, the finding of the court was not conclusive as to his right, yet it was a fact to be ascertained by the court, in order that it might be enabled to decide the real question in issue, whether appellants had or had not been elected. If Young had been elected, they had not. Upon the facts found by the court below Young was elected, and it was properly so held by that court.

The only remaining question material to be considered is, whether there was any error in the holding of the court below, that upon the facts found neither of the appellants was elected to the office of trustee of the city of Oakland. Upon the facts as found by the court, these three candidates received twenty-seven votes each, but there were only two offices to fill. It was a case of a tie vote.

Section 16, article 2, of our State constitution, provides that in all elections held under it the persons receiving the highest number of votes shall be declared duly elected; and our civil code, section 36, page 573, provides the mode of proceeding where the requisite number of county or precinct officers shall not be elected by reason of two or more persons having the highest and an equal number of votes for the same office. Upon such proceedings the successful party is declared duly elected, and this is equivalent to receiving the highest number of votes. But until this is done, in accordance with the statute, neither is elected. (American Law of Elections, secs. 169 and 170; *People* v. *Moliter*, 23 Mich. 341; *Hancock* v. *Barnes*, 4 Bush. Ky. 390.)

Whether A. C. Young was eligible or not is not for us to consider, as that was a fact found by the court below upon the evidence, which is not before us; but that his formal attempt to withdraw his name as a candidate, after the result was announced by the inspectors, was ineffectual, we have

no hesitancy in declaring, and it follows that the certificates of election thereupon issued to appellants were illegal and void.

If it should be held that the inspectors had the power under the charter to take the proceeding provided for in section 36, page 573 of the code, and decide by lot in a case like this, between the different candidates, and declare the successful candidates duly elected, it could not aid the appellants in this case, for the simple reason that those steps were not taken when they attempted to exercise the duties of the office of trustees, and the court below properly held such acts unwarrantable by law.

The judgment must be affirmed, with costs.