STATE ex rel. WALLACE B. DOUGLAS v. E. N. FALK and Others.[1]

May 15, 1903.

Nos. 13,394—(2).

### Election at Organization of County.

The proviso to Laws 1895, c. 124, § 2, amending Laws 1893, c. 143, § 4, in its effective operation, does not disfranchise electors having the right to vote upon the organization of a new county in this state, in violation of the state constitution, art. 1, § 2.

### Voting for Competing Proposals.

Where several competing propositions for county division are submitted at the same election, the electors are authorized to vote only upon one, which must be carried by an affirmative vote of a majority on that issue, and by a plurality over its competitors. State v. Board of Commrs. of Red Lake Co., 67 Minn. 352, followed.

[1] Reported in 94 N. W. 879.

**Ballots.**

> The ballots prepared by the distributing officer were improperly separated, so that the questions of county division and district and county officers were upon different slips, instead of upon one, as provided in Laws 1901, c. 88, §§ 1. 2. *Held*, under the showing in this case, to have been an irregularity that did not defeat the proposition by which Clearwater county was established at the last election.

Writ in the nature of quo warranto issued from the supreme court upon relation of the attorney general, requiring respondents to show by what right they exercised the offices of county commissioners of Clearwater county. Writ discharged.

*W. B. Douglas*, Attorney General, *H. J. Loud*, County Attorney, *L. H. Bailey* and *Thomas Kneeland*, for relator.

*Holston & Hagen, Ira B. Mills* and *Ernest B. Mills*, for respondents.

LOVELY, J.

Quo warranto upon the information of the Attorney General to contest the political entity of Clearwater county, which claims independent municipal existence under proceedings pursuant to Laws 1893, p. 262 (c. 143), G. S. 1894, § 621, etc., as amended by Laws 1895, p. 270 (c. 124). The five respondents are acting members of the board of county commissioners of the new county, whose official rights depend upon the action of the voters of the parent county (Beltrami) at the last election. The petition of relator, answer of respondents, and stipulation of the parties present the material facts which we must adopt upon this review.

There were three valid petitions for the division of Beltrami county submitted within the proper time for the fall election of 1902—one for Roosevelt county, filed February 27 of that year; and two later, one for Clearwater, filed March 28, and one for Black Duck, filed July 31—each, respectively, containing a description of the territory to be included therein, and each having sufficient population, with other prerequisites, as provided for in Laws 1893, p. 262 (c. 143). Black Duck contained no territory included in either of the other proposed counties. In Clearwater twenty-seven townships were included that were in Roosevelt, and six

townships in Roosevelt that were not in Clearwater, and three in Clearwater not in Roosevelt. In this respect Roosevelt and Clearwater were adversaries for county organization. In preparing the ballots for the polls, the auditor of Beltrami county had the three propositions printed together on blue-tinted paper six and three-eighths inches wide and five inches long, but separate from the ballots which contained the candidates for district and county officers. Both sets were blocked, each bearing the heading "Official Ballot," and when so separately made up were distributed and used generally by the electors of Beltrami county, and there is no suggestion or evidence that the disregard of the provisions of G. S. 1894, § 27, et seq., and Laws 1901, p. 88 (c. 88), in this respect, misled any voter, or deprived him of the exercise of his choice upon the questions thus submitted.

The vote on county division was properly returned to the county and state canvassing boards, with the following result: For Roosevelt county there were 610 votes, against Roosevelt 691 votes; for Black Duck 161 votes, against Black Duck 388 votes; for Clearwater 664 votes, against Clearwater 48 votes. After the official canvass, the Governor issued his proclamation declaring that Clearwater had received a majority of the votes cast therefor, and was duly organized, which was published as required by law. Respondents, at the proper time and place, met. Each duly qualified, and proceeded to organize as a board of county commissioners for the transaction of business; among other things, named persons to fill all the county offices, as required by Laws 1893, p. 262 (c. 143).

So far as we find it essential to consider the claims of relator upon this hearing, they may be embraced in three propositions: First, that the proviso to Laws 1895, p. 270 (c. 124, § 2), amending Laws 1893, (c. 143, § 4), authorizing the submission of conflicting petitions, is in violation of the state constitution; second, that the provisions of Laws 1893, c. 143, authorizing the appointment by respondents of a judge of probate and clerk of court for the new county are in violation of the state constitution; third, that the ballots prepared and distributed by the county auditor, as well as their use by the electors, and subsequent canvass, violated the

election laws of the state, and were, therefore, ineffectual for any purpose.

1. Under Laws 1893, c. 143, all the electors of the parent county from which the new county is to be separated are authorized to vote upon that question. Subsequently Laws 1895, c. 124, § 2, amended Laws 1893, c. 143, § 4, by adding thereto this proviso:

"The elector shall only vote for or against one proposition, and if the elector place a cross mark opposite more than one such proposition, said ballot shall not be counted for any such proposition, but shall be as to such proposition null and void."

The contention for relator is that this proviso conflicts with section 2, article 1, of the state constitution, which declares that

"No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof."

It is urged that the proviso and amendment of 1895 deprive every elector to whom the division question is submitted of having his vote cast and counted upon each proposition for the division of the parent county, and hence deny to him substantial rights which are protected by the prohibition of the organic law referred to.

Under this proviso, it is true, voters of the parent county are required to select one of the county propositions upon which his choice is to be exercised, for a supporter of Clearwater county could not vote against Roosevelt, nor a supporter of Roosevelt against Clearwater, the effect of which would be to compel him to make a choice of evils between the several propositions presented, and deny any voice in the negative vote on other obnoxious propositions. Hence, the application of these restrictions by which those opposed to the dismemberment of the county at all are compelled to divide their vote is so unfair as to deny the citizen effective enjoyment of his right of franchise. But the difficulties thus suggested cannot be absolutely resolved by any argument to show that one method of securing county division is more fair or reasonable than another, for the formation of new counties is peculiarly a practical question, depending in a large measure upon necessities as they arise, which may be required in a new state

where the increasing population and other important considerations require county division to secure the best interest of the territory affected thereby.

Primarily, the right under prescribed constitutional limitations of territory for organization of counties is a legislative function, depending entirely upon the exercise of the judgment of the lawmaking power (Commrs. of Laramie Co. v. Commrs. of Albany Co., 92 U. S. 307; State v. McFadden, 23 Minn. 40); and what the legislature may do in expressing the sovereign will of the people in this respect it may also accomplish by the proper delegation of its authority under a general law to the voters interested in the division of the county. That this was the end sought by the proviso of section 4 must be presumed. This contention of relators is not new, but is fully answered by the decision in State v. Board of Commrs. of Red Lake Co., 67 Minn. 352, 69 N. W. 1083, wherein existing enactments for the organization of new counties, including the proviso to section 4, supra, were construed, and it was laid down that, where several competing propositions for the organization of new counties were submitted, the successful one must have more votes to support it than negative votes on the same question, and a plurality over the affirmative votes on any other division proposition. Since the decision in the Red Lake County case the practical construction there given to the proviso here attacked has been acquiesced in, and new counties have been organized thereunder, and we are all agreed that such construction, although by a divided court, must be now upheld upon the rule of stare decisis.

It is not our understanding of the recent decision of this court in State v. Larson, supra, page 123, that it conflicts in the respects mentioned with the decision of the Red Lake County case. In the latter decision Columbia county was to be cut off from Polk county, and several other division propositions were submitted for this purpose, in each of which the territory named for the new county of Columbia was identical, the difference of each from the other being only that a different county seat was named therein; thus making the main proposition of county subdivision depend-

89 M.—18

ent upon the selection of a county seat, so that when they were submitted it was really the location of the county seat rather than subdivision of the county that would influence and control the will of the voters. We did not go further in that case than to hold that the submission of such a proposition could not be sustained, where the main proposition of forming the new county is made to depend entirely upon a subsidiary question.

In this case, in the competing propositions between Roosevelt and Clearwater, the territory was not identical. There were three townships in Clearwater that were not included in Roosevelt, and six in Roosevelt not included in Clearwater, making a distinction, in the aggregate, of nine townships. It is insisted, however, that this is not sufficient to distinguish the controversy here from the Columbia County case, upon the view that the disparity to the extent mentioned could not be such as materially to affect the identity of the two counties; but, without having before us any other facts than the variant conditions of the territory affected by the competing propositions, we cannot hold that there was a substantial identity in both.

As we have stated before, the subject of county division is a practical one, and we are obliged to meet each question affecting such division as it arises; and the important and controlling fact before us, which shows that Roosevelt and Clearwater were conflicting propositions, is, if either was adopted, it would be, to the extent of nine townships, a different county from the other, which seems to be a difference so material and substantial as to justify the submission.

2. It is insisted that the appointment of the clerk of court and judge of probate by the board of commissioners of the newly organized county is in violation of the state constitution, art. 6, §§ 7 and 13, which provides in terms for the election of such officers by the suffrages of the electors. Conceding that the two officers named could not be appointed by the board of commissioners of Clearwater county, the provision relating to county officers in the county organization act of 1893 providing therefor is in no wise necessary or essential to the organization of the county itself, or to the duties of the respondents as the board of commissioners

generally; hence, if there was an excess of authority by the board in this respect, it would not invalidate other independent provisions for the organization of new counties. The alternative writ in this case is directed to the respondents, who, as the board of commissioners, would derive their legal power from a valid law, and the main question of the authority of such commissioners, does not, in our view, require us to pass upon the legality of their action in appointing the county officers. Therefore the power of the respondents to appoint a judge of probate and a clerk of court is not before us, nor determinative of the corporate existence of Clearwater.

3. The only further question presented on this hearing which is material to its disposition arises upon the distribution of the ballots by the auditor. It must be conceded that this officer, by separating the ballots for county subdivision from those for county and district officers, did not act in accordance with G. S. 1894, § 27, et seq., and Laws 1901, c. 88, which require the county dismemberment propositions to be placed at the head of the county and district ballots, and each to be printed upon the same slip. It is claimed for the relator that this provision was mandatory, and the course pursued forbids the canvass of the vote and its return to the Governor; hence that the proclamation by the Governor was a nullity.

A difficulty would arise in adopting this view, for both sets of ballots had the proper heading "Official Ballot," and if, by the improper course pursued by the auditor, either through mistake or intention, the canvass could not be made, a serious question would arise as to which ballot was to be treated as official, and whether the irregularity in dividing them in the respect noted would, if the results contended for by relator were adopted, involve not only the question of reorganization, but the election of county officers; but we do not think we are required to solve this question. In this country, the right of the elector to have his vote cast and counted is protected from fraud or mistake of the election officers by every possible safeguard, where it appears that his untrammeled right to this high privilege of citizenship has not been denied or abridged. McCrary, Ele. (4th Ed.) § 131; Taylor v. Taylor, 10 Minn.

81 (107); Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95; Soper v. County of Sibley, 46 Minn. 274, 48 N. W. 1112.

It is not contended for the relator that the separation of the ballots has deprived any voter of the privilege of exercising his choice upon the division question, and, while the course pursued by the auditor was contrary to law, it was acquiesced in generally, and there is no showing or claim, even, that any voter was misled thereby. In Laws 1893, c. 143, § 17, supra, it is specifically provided that

"No failure or refusal of any county officer to do any of the acts or things herein required of him to be done * * * shall affect the validity of the establishment of any such new county."

We are therefore led to the conclusion, which is manifestly just and sound upon principles of public policy, that the course pursued in this respect was an irregularity merely, rather than the disregard of a mandatory requirement, which would defeat the will of the voters. The views which we have expressed upon the three material questions involved render it unnecessary to discuss others submitted by the respondents, and lead us to the conclusion that the county of Clearwater was legally established.

The writ is discharged.