W. D. CARN, N. A. FORT, J. W. DAVIS, J. G. BASKIN AND WALTER LUFFMAN, AS MEMBERS AND COMPOSING THE BOARD OF COUNTY COMMISSIONERS OF MARION COUNTY, FLORIDA, AND BOARD OF COUNTY COMMISSIONERS OF MARION COUNTY, FLORIDA, *Appellants,* v. JOHN T. MOORE, *Appellee.*

Opinion Filed July 14, 1917.

1. An elector should not be deprived of his right to vote, solely on account of any irregularity, mistake, error or wrongful act of officers charged with the duty of providing means for, or conducting elections.

2. An election will not be set aside because some official has not complied with the law governing elections, when the

Carn et al. v. Moore—Opinion of Court.

voter has done all in his power to cast his ballot honestly and intelligently, unless fraud has been perpetrated, or corruption or coercion practiced to a degree to affect the result.

3.  In elections, a voter should be held to strict accountability for such things as are within his control, but not for those things which public officers are required to do.

4.  A voter is not to be deprived of his constitutional rights by the neglect or wilful wrong of a public officer charged with the duty of supplying him with the means or the opportunity of expressing his choice.

5.  An election will not be set aside on purely technical grounds, where no fraud is established, and where no voter was prevented from expressing his choice, or where it is not shown that but for the acts complained of, the result would have been different.

6.  Section 210 of the General Statutes of Florida, is intended to preserve the secrecy of the ballot, and to prevent the use of any ballot other than the official ballots printed and distributed by designated officials.

7.  The provisions of Section 210 that "no ballot shall be received and counted in any election, to which this act applies, except it be provided as herein prescribed," is intended to prevent a person from voting any ballot other than the official ballot.

8.  The prohibition in Section 210 against any ballot being received and counted, "except it be provided as herein prescribed" does not relate to Sections 219 and 220.

9.  An innocent voter should not be deprived of his right to exercise the elective franchise, because a public official fails to perform some duty required of him by the election laws.

Appeal from Circuit Court for Marion County, W. S. Bullock, Judge.

Decree reversed.

*L. W. Duval, R. A. Burford* and *L. N. Green,* for Appellants;

*H. M. Hampton,* for Appellee.

BROWNE, C. J.—This is an appeal from a decree of the Circuit Court for Marion County declaring invalid a local option election held in that county. The bill of complaint sets up several grounds for having the election declared void, but all were abandoned or not proven, and the decision of the chancellor was based entirely on the proposition, that because on the ballots furnished the voters by the County Commissioners the words "For Selling" and "Against Selling" were printed in a different place on every alternate ballot, they should not have been received and counted. The following is the form of one of the ballots used:

"If the voter wishes to cast his ballot in favor of prohibiting the sale of intoxicating liquors, wines or beer in Marion County, State of Florida, he will place his cross mark (X) before the words 'Against Selling' where the same appears on this ballot."

## AGAINST SELLING.

"If the voter wishes to cast his ballot against prohibiting the sale of intoxicating liquors, wines or beer in Marion County, State of Florida, he will place his cross mark (X) before the words 'For Selling' where the same appear on the ballot."

## FOR SELLING.

On every alternate ballot the words "Against Selling"

and "For Selling" were reversed. The words "Against Selling" and "For Selling" were printed in large, clear capitals.

The court held that the two forms of ballot were not "alike" in the true sense of the statute and should not have been received or counted under Secs. 210-219 of the General Statutes of Florida, and declared the election null and void.

The appellee challenges the form of the exceptions to the Master's report, and contends that they should not be regarded as exceptions, and consequently the report of the Master should stand confirmed, under Rule 84.

The same point was raised before the chancellor in a motion opposing consideration of the exceptions, but the court held that while the exceptions were not in such form as were sometimes used, they were not such as to warrant a refusal to consider them. We approve of the decision of the chancellor in this respect.

We will now consider the question of the illegality of the election.

Section 210, General Statutes of Florida, 1906, provides: "In all elections hereafter held in this State on any subject which may by law be submitted to vote of the people, and for all, or any State, county, district or municipal officers, the voting shall be by secret official ballots printed and distributed as hereinafter provided, and no ballot shall be received or counted in any election to which this act applies, except it be provided as herein prescribed."

Section 219 provides that: "All ballots provided by the Board of County Commissioners of any county for an election shall be alike, printed in plain type in straight lines upon plain white paper, so thick that the printing cannot be distinguished from the back, with

a slender line between each name, and extending suffi-
ciently to the left of the names to easily permit marking
before each name a cross mark (X), and in the appro-
priate place the words, 'Vote for One' (or two, or other
number as the case may be), to indicate the numbers
which may be elected to each office, and shall be sub-
stantially in the form prescribed in Section 220 (except
that the order in which the several offices to be filled are
stated may be varied), Provided, That nothing in the
section shall be construed to prohibit the names of the
several candidates for National, State and County offices
and other matters to be voted on, being printed in the
same order as now and in one or more columns on the
same ballot. (Ch. 5612, May 22, 1907, No. 1, amending
No. 219, Gen. St.)"

It is contended that the provisions of Section 210 are
mandatory, and relate to and control all the provisions
of 219, and that because the words "For Selling"
and "Against Selling" were not printed in the same
place on all the ballots that the ballots therefore
were not "alike" and that under the provisions of
Sec. 210, they should not have been received or
counted. It is not claimed that any voter was pre-
vented from voting his choice by reason of the arrange-
ment of the ballots, nor is there any proof of fraud or
any intention to perpetrate a fraud. While there is some
difference in the decisions of the courts as to whether
provisions of statutes similar to the one under considera-
tion are mandatory, or merely directory, an examination
of them discloses that there is unity in their diversity, in
that in most, if not all, where provisions of the law gov-
erning the form of ballots and the conduct of elections
have been held to be mandatory, it was where the secrecy
of the ballot was involved. In other cases where the

provisions were held mandatory the law contained express provisions prohibiting the doing of certain things. Thus in People *ex rel.* Anderson v. Rinehart, 161 Mich. 585, 126 N. W. Rep. 704, the statute provided that one of the inspectors, "shall write his initials in ink on ·the lower left hand corner of the back of each of said ballots, but not upon the perforated corner." This was held to be mandatory, and ballots marked with the initials of the inspectors "upon the perforated corner" were held to be invalid. .

In ex parte Riggs, 52 S. C. 298, 29 S. E. Rep. 645, a provision of the statute as to the size of the ballot, and the same should be "without ornament, designation, mutilation, symbol or mark whatsoever," was held to be mandatory.

A similar provision of our law was held to be mandatory in the case of State *ex rel.* Law v. Saxon, 30 Fla. 668, 12 South, Rep. 218, and Chief Justice RANEY, who delivered the opinion of the court, predicated the decision on the inviolability of the provisions of the law safeguarding the secrecy of the ballots in this language: "The object intended to be effected was the independence of the voter, and this was sought to be secured by prescribing to a certain extent the form of the ballot, and excluding from it whatever was within the prohibition of the provisions, and thereby securing the secrecy of the ballot; inviolable secrecy as to the person for whom an elector may vote, being the material guarantee of the constitutional mandate that voting at popular elections shall be by ballot." .

In the case of Attorney General v. McQuade, 94 Mich. 439, 53 N. W. Rep. 944, the provisions of the law which was held to be mandatory, related to the inspectors or

other persons entering the booths, and other wrongful acts tending to destroy the secrecy of the ballot.

In the case of Gomez v. Timon, (Tex. Civ. App.) 128 S. W. Rep. 656, the statute provided for the use of one ballot, with the words "For Prohibition" and "Against Prohibition," and those who favored prohibition should erase the words "Against Prohibition," or vice versa. Two ballots were used, one with the words "For Prohibition," and the other with the words "Against Prohibition," and the voter was furnished with one of each. He voted one and retained the other. The provision of the law requiring one ballot was held to be mandatory, and because two were used the election was held to be invalid. It is apparent that the use of two ballots tended to entirely destroy the secrecy of the ballot, as bribery and coercion could readily be practiced, by making the voter show the ballot which he had not voted, when he came from the voting place.

All these cases come within the classification which we have noted, as tending to insure and preserve the constitutional requirements of the secrecy of the ballot.

The courts that hold that an elector is not to be deprived of the high privilege of voting on account of any irregularity, mistake, error or even wrongful act of the officers charged with the duty of providing means for, and conducting elections, that a much higher stand than those which insist upon a strict technical construction. Thus, where the ballots furnished by the proper officials, were improperly separated by the inspectors before being handed to the voter, it was held to be an irregularity which did not defeat the election. In discussing it the court said: "In this country, the right of the elector to have his vote cast and counted is protected from fraud or mistake by the election officers by every possible safe-

guard, where it appears that his untrammeled right to this high privilege of citizenship has not been denied or abridged." State *ex rel.* Douglas v. Falk, 89 Minn. 269, 94 N. W. Rep. 879.

Two interesting cases from Oregon illustrate the rule that where a duty is placed upon officials, a failure to comply strictly with the law does not deprive the voter of his right, if no fraud was perpetrated, or if the voters were not prevented from freely expressing their choice by their ballot. An election was held in Oregon under a law which required the ballots to be printed on white paper and the ballots used were printed on tinted paper. The ballots were not furnished by State or county officials. The court held the election invalid, because it was the duty of the voter to know the law, and he had no right to use a colored ballot. State *ex rel.* Mahoney v. McKinnon, 8 Ore. 493. Subsequently the legislature enacted a law providing that no ticket should be used that was not printed on paper furnished by the Secretary of State. There were two contending parties in the field, one known as the "Citizen's ticket" had its ballots printed on plain white paper, and the other, the "Prohibition ticket" had its ballots printed on tinted paper. The rule in the case of State *ex rel.* Mahoney v. McKinnon, *supra,* was invoked to have the election declared invalid, but the court held that the law which required the Secretary of State to furnish the paper on which the ballots must be printed, shifted the duty from the voter to the Secretary of State to provide proper ballot paper, and that if he furnished some with white paper and others with tinted paper, the voters were not to be deprived of their right to vote on account of the mistake of the Secretary of State. State v. Wolf, 17 Ore. 119. 20 Pac. Rep. 316.

The State of Washington has a statute which requires all ballots to have the initials of one of the election officers written thereon, and that any ballot not so en-dorsed "shall be void and shall not be counted." In one precinct the judges or inspectors failed to comply with the requirement, and it was sought to have the election declared invalid on that account; but the Supreme Court said:

"Can the legislature enact a law whereby election officers can practically disfranchise all the electors of a precinct, where the electors themselves are not at fault? If so, the constitutional guarantee is of small conse-quence. Legislation going to promote the honesty of elections is most beneficial in character, and, as a means of securing this end, the general policy of the law is, that the ballot shall be a secret one, that it may not be known for which candidate any particular voter voted, in order that bribery may be prevented. Provision is also made as to the duties of election officers, to the end that a fraudulent canvass of the votes may be prevented. There is a good ground for recognizing a distinction between the obligations placed upon the individual voter and those matters which relate to the duties of election officers. Great care should be taken to distinguish be-tween those requirements designed to prevent fraud, and which are necessary to the purity of elections, and those which, while designed for the same purpose, are not essential thereto, or we may overreach the salutary effect sought to be obtained from provisions of the character first mentioned by going so far in construing as valid and mandatory provisions of the second class as to open the very door to fraud that was sought to be closed thereby.

·"The individual voter may well be called upon to see

that the requirements of the law applying to himself are complied with before casting his ballot, and, if he should wilfully or carelessly violate the same, there would be no hardship or injustice in depriving him of his vote; but, if, on the other hand, he should, in good faith, comply with the law upon his part, it would be a great hardship were he deprived of his ballot through some fault or mistake of an election officer in failing to comply with a provision of law over which the voter had no control. It is also a question in which the public have a direct and important interest, for the loss of such vote may have a controlling effect upon a public matter. The constitutional provision aforesaid guarantees the right to vote, and this, of necessity, carries with it the right to have the vote counted. Of course, the manner of voting and canvassing votes must be subject to all reasonable legislative requirements. Many cases have been cited by counsel as supporting the positions taken by them respectively, and many of these involve a consideration of various phases of the law commonly known as the Australian Ballot Law in force here, but which is comparatively a new thing in this country. These cases cannot all be harmonized, but the general trend thereof has been to recognize a clear distinction between those things required of the individual voter, and those imposed upon election officers. There is a disposition to hold the former valid and mandatory, but where there has been a substantial compliance with the law on the part of the individual voter, and it is made to appear that there has been, in fact, an honest expression of the popular will, there is a well-defined tendency to sustain the same, although there may have been a failure to comply with some of the specific provisions of the law upon the part of the election officers, or some of them." Moyer v. Van

De Vanter, 12 Wash. 377, 41 Pac. Rep. 60, 50 Am. St. Rep. 900.

In Allen v. Glynn, 17 Colo. 338, 29 Pac. Rep. 670, 31 Am. St. Rep. 304, in discussing the provisions of laws governing what is called "The Australian Ballot System," the court said: "It may be said that all provisions of such laws are mandatory in the sense that they place a duty upon those who come within their terms. But it does not follow that an election should be invalidated because of every departure on the part of public officers from the terms of the act: *Bowers* v. *Smith*, Mo., Nov., 1891; 17 S. W. Rep. 761. We do not feel at liberty to place a narrow construction upon this act. To overthrow the expressed will of a large number of voters for no fault of theirs, as we are asked to do, would be to defeat the purpose of all election laws, which is to obtain a full and fair expression of the wishes of the voters: *Kellogg* v. *Hickman*, 12 Col. 256." And on petition for rehearing thus emphasized its conclusions: "Counsel insist that '150 ballots' should not be counted for Glynn, because of the errors of the public officers charged with the duty of providing the ballots. These errors, without doubt, arose from the fact that the People's Party in the thirteenth judicial district selected a different emblem from the one chosen by the state convention of the 'People's Party for Colorado,' and the county clerks, through inadvertence, caused the official tickets to be printed without reference to such different emblems.

"Is it possible that by any refinement of reasoning this position of counsel can be shown to be right—that the ballots of 150 legal voters can be rejected for what, at most, are but irregularities on the part of public officials, and the expressed will of the voters of the district be thereby thwarted?"

See McGrane v. Nez Perce County, an Idaho case reported in 18 Idaho 714, 112 Pac. Rep. 312, Ann. Cas. 1912A, p. 165, and notes, for a full discussion of the effect on the result of an election of the neglect, or failure of persons charged with duties in connection therewith. While we might instructively quote freely from this case, we will content ourselves with one paragraph: "While we are obliged to condemn in unqualified terms the ballots used in his election and held that they were not in conformity with law in that they were numbered, we also hold that the electors of Nez Perce county were not chargeable with this error or mistake, and that the wrong of the officers cannot be visited upon the electors so as to deprive them of the right of suffrage where the electors themselves have not been parties to the wrong. Two wrongs will no more make a *right* in law and government than in morals. To follow up the wrongful preparation of ballots with setting aside the election would only be adding another injury to an already outraged electorate."

It appears that the courts have established no rule which is generally recognized by which it may be definitely determined when a provision of an election law is to be regarded as mandatory and when merely directory, or under what circumstances a provision which is mandatory upon the officials charged with the duty of arranging for and conducting elections, will be regarded as grounds for nullifying an election, when the electors have freely exercised the right of suffrage and there is no charge that if the law had been strictly complied with the result would have been different. Republics regard the elective franchise as sacred, and the courts should not set aside an election because some official has not complied with the law governing elections, where the

voter has done all in his power to cast his ballot honestly and intelligently, unless fraud has been perpetrated or corruption or coercion practiced to a degree to have affected the result.

Our election laws, like all others, contain two classes of requirements and prohibitions. Over one the elector can exercise no control, over the other he can. He should be held to strict accountability for such things as are within his control, but not for those things which public officials are required to do. A voter may sacrifice his right to have his ballot accepted and counted for wrongful or illegal acts on his part, but he is not to be deprived of his constitutional rights by the neglect or wilful wrong of a public officer charged with the duty of supplying him with the means or the opportunity of expressing his choice. The attack on this election, is purely technical, as no fraud was established, nor was it shown that a single voter was prevented from expressing his choice, or that had the ballots not been printed as they were, the result would have been different.

The reasoning by which it is attempted to make Section 210 apply to and govern Section 219, and the effect, if it does, is not sound. Section 210 is intended to preserve the secrecy of the ballot, and to prevent the use of any ballot other than the "secret official ballots printed and distributed" by certain designated officials, and the command that "no ballot shall be received or counted in any election to which this act applies, except it be provided as herein prescribed" unmistakably refers to the official ballot which the voter is required to use. If he attempts to use a ballot other than one provided or required by that section it shall not be "received or counted." This prohibition does not relate to the provisions of Sections 219 and 220. The first fixes the obligation of the voter, and

prohibits him from using any ballot not provided for his use by the State; while sections 219 and 220, are instructions to public officials. To deprive an innocent person of his rights because some public official fails to do his duty, is abhorent to our sense of right and justice, and we will not give to a statute a construction which will produce that result. Having reached this conclusion, it is unnecessary for us to decide whether the ballots provided for the voters were "alike" or not. We will say, however, that the word "alike" is not synonymous with "identical;" a thing is "alike" another, when it is similar to, or resembles it; while identical means "exactly the same."

We cannot see how any one but a blind man, or one why by reason of ignorance, could not read, could have been confused or misled in the slightest degree by the manner in which the ballots were printed. Our statute provides for the inspectors assisting the former, but leaves the latter to pay the penalty of his ignorance until such time as he may himself remove the disability. The testimony discloses that the purpose of the arrangement of the words on the ballot was to prevent fraud, by making it impossible for an ignorant voter to take with him into the booth a device by which he would be enabled to mark his ballot without being able to read it.

The record fails to show that any person entitled to vote was prevented from expressing his choice, or that the election was not a full, fair and free expression of the will of the people, or that if the ballots had been identical with respect to the arrangement of the words "For Selling" and "Against Selling," the result would have been different. We are therefore constrained to hold that the election was valid, and the decree of the lower court is reversed.

The case having been disposed of on its merits, it is not necessary for us to decide the questions raised by the motion to vacate the supersedeas.

TAYLOR, SHACKLEFORD, WHITFIELD AND ELLIS, J. J., concur.