## LOCKE v. CITY OF ST. PETERSBURG BEACH.

Circuit Court, Pinellas County.

April 12, 1954.

Robert W. Fisher, St. Petersburg, for plaintiff.

Lindsey & Cargell, St. Petersburg Beach, for defendant.

ORVIL L. DAYTON, Jr., Circuit Judge.

The 1953 session of the legislature enacted a special law known as Senate bill 615 pursuant to which the question of the annexation to the city of certain areas adjoining the corporate limits of the city of St. Petersburg Beach would be determined by referendum election. The election was held on October 27, 1953 and plaintiff, a resident of one of the areas sought to be annexed, voted. Within a short time after casting his ballot he reported to the election officials at the polling place that he had made a mistake in casting his ballot, i.e., that he had voted *for* annexation of the area when it had been his intention to vote *against* it. The election officials declined to permit him to change his ballot.

On November 12, 1953 plaintiff exhibited his bill of complaint seeking a decree of this court declaring that his vote should have been changed by the election officials when notified, so that his vote would have been recorded as against the proposed annexation. The city moves to dismiss the bill on several grounds among which

are that it was not filed within the time prescribed by the statute governing elections, the Election Code of 1951, that it was not sworn to, and that it does not state a cause of action upon which the relief sought can be granted.

This case is somewhat unique in the annals of jurisprudence in that plaintiff's vote was the only vote cast in the election. Plaintiff contends the city never adopted the Election Code as provided in section 104.45, Florida Statutes 1951, and that consequently the code provisions as to the time of filing suit, etc., are not applicable. Certainly if the Election Code is applicable to this election the suit should be dismissed for the reason that it was not filed within the 10 day period provided in the statute—inasmuch, however, as it does not appear that the city has complied with the provisions thereof for its adoption by municipalities I am of the opinion that the suit should not be dismissed on that technical ground.

The principal question for determination by the court, therefore, is the sufficiency of plaintiff's claim for the relief sought. The unusual factual situation at once removes this case from those holding that a ballot once cast cannot be changed for the reason that when cast a ballot loses its identity—no problem exists here to establish the identity of plaintiff's ballot.

An election is the formal expression of choice upon a proposition submitted. Plaintiff, a qualified voter, appeared at the polling place for the purpose of recording the formal expression of his choice upon the proposition submitted, i.e., the annexation to the city of the area in which he resided. The bill alleges no fraud of any kind. From the record it appears plaintiff entered the voting booth, cast his ballot and emerged therefrom without hindrance or interference of any kind from anyone. He does not say he was unable to read or understand the question submitted. He does not contend the voting machine was not in proper working order, nor does he say the result of the election does not accurately reflect the expression of his choice made by him within the privacy of the voting booth. He says merely that he made a mistake.

Plaintiff seeks the aid of a court of equity to undo the results of his own negligence. In my opinion the rule applicable in this case is well stated in Carn v. Moore, 76 So. 337, in which Chief Justice Browne, speaking for the Supreme Court, said—"Our election laws, like all others, contain two classes of requirements and prohibitions. Over one the elector can exercise no control; over the other he can. *He should be held to strict accountability for such things as are within his control . . . .*" (Italics added.)

The elective franchise is the cornerstone of our system of government—and in its exercise we should employ the utmost care that there be strict compliance with those requirements and conditions over which we can exercise control.

The law provides for the posting of instructions for electors in preparing their ballots. Provision is made for assurance to blind, disabled or illiterate voters. Every possible safeguard is provided by law to insure that each elector has the opportunity to express his choice in the election without interference from any source. Until his ballot is completed and deposited in the ballot box, or until the final lever is pulled on the voting machine, an elector has absolute control of his ballot.

Once the ballot is cast, however, he has no more control over it. There must be an end to the transaction in order that the final results may be ascertained. The Election Code, while not applicable here, indicates that the legislature was in accord with this view when it enacted section 101.51, which provides—"After casting his vote, he shall at once leave the polling room by the exit opening, and shall not be permitted to re-enter on any pretext whatever."

If an elector who has cast his ballot and emerged from the voting booth and made his exit from the polling room can be permitted later to change his vote because he carelessly pulled the wrong lever or marked the wrong space on the ballot, on the ground that his ballot may be identified, he could with equal reason be permitted under similar circumstances to change his ballot because he had changed his mind. An absentee ballot is readily identifiable before delivery to the canvassing board—but it cannot be opened and changed by anyone once it has been sealed and deposited with its proper custodian.

The mere fact that an elector's ballot can be identified is not sufficient ground to render inapplicable the well settled rule that an elector is held to strict accountability for such things as are within his control, Carn v. Moore, supra. Absent a claim of fraud of some kind, an elector cannot later be heard in a court of equity on the ground that he was negligent in the exercise of his right to vote.

For the foregoing reasons the city's motion to dismiss will be granted, an appropriate decree may be prepared from this opinion.