Murphy, Admr., et al. *v.* Niehus et al.

(Decided February 11, 1935.)

*Messrs. Ragland, Dixon & Murphy,* for plaintiffs in error.

*Mr. W. Donald Hall* and *Mr. Charles E. Dornette,* for defendants in error.

Matthews, J.  Amelia Sacker Schaefer was the second wife of Jacob Schaefer, who died testate in 1910. By his will he bequeathed one-third of his estate to his widow, Amelia Sacker Schaefer.  She elected to take under the will.  The bill of exceptions shows that among his assets were fifty-five shares of the common stock of The Cincinnati Gas & Electric Company, evidenced by four certificates. There was filed in the Probate Court in the administration case of Jacob Schaefer a consent to a distribution in kind, and, while the final account in that estate shows no such distribution, it is admitted that the stock certificates which Jacob Schaefer possessed at the time of his death were surrendered and new certificates obtained by the executor, who delivered certificate number 43950, for twenty-seven shares, to Amelia Sacker Schaefer, as a part of

the portion of the estate bequeathed to her. It is this stock which is the subject of controversy in this case.

Amelia Sacker Schaefer died intestate in 1930. No descendants survived her, and her heirs at law and next of kin are a brother and the children of deceased brothers and sisters.

Jacob Schaefer left surviving him four children by his prior marriage.

The two classes—the claimants under Amelia Sacker Schaefer, on the one hand, and the claimants under Jacob Schaefer, on the other—assert the right to succeed to certain corporate stock, one claiming that the stock is, and the other claiming that the stock is not, the stock of The Cincinnati Gas & Electric Company which came to Amelia Sacker Schaefer under the will of Jacob Schaefer.

In a proceeding under Section 10509-95 *et seq.*, General Code, to determine heirship, the Probate Court held that it was the stock which came to Amelia Sacker Schaefer under the will of Jacob Schaefer, and that, therefore, his children of his prior marriage were entitled to it under Section 8577, General Code, in force at the time of Amelia Schaefer's death. The Common Pleas Court affirmed this judgment. The case is here on error to that judgment.

In 1928, during the lifetime of Amelia Sacker Schaefer, certificate number 43950 for twenty-seven shares, which she received from the estate of Jacob Schaefer, was surrendered by her to The Cincinnati Gas & Electric Company, and in lieu thereof "Temporary Certificate" No. TPO 1055 was delivered to her. A copy of this temporary certificate is in evidence. In it is a recital that it was exchangeable for an engraved certificate when the latter was ready for delivery. It appears that the exchange of the temporary certificate for the permanent one was made, but the latter is not in evidence. However, the recitals in the temporary

certificate sufficiently indicate the nature of the transaction. In the temporary certificate it is stated that:

"This certificate and the shares represented hereby are issued and shall be held subject to all the provisions of the Agreement of Consolidation between The Cincinnati Gas & Electric Company and Columbia Power Company, filed in the office of the Secretary of State of Ohio, to which reference is hereby made with the same effect as if herein set forth, and for a statement of the number of shares with par value, the par value of each and their aggregate par value, and the number of shares without par value which are authorized to be issued at the date hereof, reference is hereby made to Article Fourth of said Agreement of Consolidation set forth on the reverse of this certificate."

Indorsed on the certificate is a copy of "Article Fourth of the Agreement of Consolidation between The Cincinnati Gas & Electric Company and Columbia Power Company," in which is set forth in detail the capital structure of the "Consolidated Corporation," consisting of 750,000 shares of preferred stock and 750,000 shares of common stock; the rights attaching to each being elaborately defined.

This certificate recited that Amelia Schaefer was the owner of twenty-seven shares of the "Cumulative 5% Preferred Stock, Series A" of The Cincinnati Gas & Electric Company.

Section 8577, General Code, which was in force at the time of Amelia Schaefer's death, so far as it is material here, was as follows:

"When the relict of a deceased husband or wife dies intestate and without issue, possessed of any real estate or personal property which came to such intestate from a former deceased husband or wife by deed of gift, devise or bequest, or under the provisions of section eighty-five hundred seventy-four, then such estate, real and personal, shall pass to and vest in the

children of such deceased husband, or wife, or the legal representatives of such children. If there are no children or their legal representatives living, then such estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate, or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife from which such personal or real estate came, or their legal representatives."

Is this stock personal property which came to Amelia Schaefer from her deceased husband within the meaning of Section 8577, General Code?

Our attention has been called to two cases in our Supreme Court upon this subject. In *Guear* v. *Stechschulte, Admr.*, 119 Ohio St., 1, 162 N. E., 46, the relict received notes secured by mortgage, which she collected, and then invested the proceeds in government bonds. The court held that Section 8577, General Code, did not control the devolution of these bonds. The applicable paragraph of the syllabus reads:

"2. The provisions of Section 8577, General Code, govern and control the disposition of only such property as had come to an intestate from a former deceased husband or wife. Property thereafter acquired by purchase, though with the proceeds of property which had come from the former deceased husband or wife, is not within the terms of that section or distributable in accordance with its provisions."

In *Wilson* v. *Eccles,* 119 Ohio St., 184, 162 N. E., 797, an estate came to the relict from the deceased spouse, and the surviving spouse at the time of her death had an estate consisting of "what is left of that estate, or the proceeds and increase and accumulations therefrom." The court held that Section 8577, General Code, was not applicable. At page 188 the court said:

"In the absence of any binding or even persuasive

authority, it seems to this court at this time that the salutary rule should be that, in order that Section 8577 should have application, it must be the identical real and personal property which came from the deceased husband to the wife. Any other rule leads to confusion.''

This brings us to the consideration of whether the stock owned by Amelia Schaefer at her death was the same stock she received under the will of her husband, Jacob Schaefer.

The proceedings for consolidation of The Cincinnati Gas & Electric Company and Columbia Power Company were prescribed by Section 8623-67, *et seq.*, General Code. By Section 8623-67, General Code, it is provided:

''Any two or more corporations organized under this act or any previous corporation act of this state may consolidate into a single corporation hereinafter called 'consolidated corporation,' which may be any one of such constituent corporations or a new corporation to be formed by such consolidation, as follows:

''(a) The board of directors of each corporation shall approve an agreement which shall set forth: * * *

''(6) The terms and conditions of the consolidation, the mode of carrying it into effect, the manner and basis of converting the shares of each of the constituent corporations into shares of the consolidated * * *.

''Dissenting shareholders, whether or not entitled to vote, shall be entitled to relief in the manner and under the conditions hereinafter provided.''

The effect of the consolidation is dictated by Section 8623-68, as follows:

''When the agreement of consolidation is signed, acknowledged and filed as required in the preceding section the separate existence of all of the constituent corporations, or all of the constituent corporations except the one into which such constituent corporations have

been merged, as the case may be, shall cease, except for the limited purpose hereinafter specified, and the constituent corporations shall become a new corporation, or be merged into one of such corporations, as the case may be, in accordance with the said agreement, which corporation so created or continued shall have the capacity possessed by natural persons to perform all acts within or without this state, * * *.''

It is provided by Section 8623-72, General Code, that a dissenting stockholder is entitled to receive the fair cash value of his stock.

It will be seen that by the statutory process all the constituent corporations may be destroyed and a new corporation emerge, or one of the constituent corporations may survive, all the others being destroyed as separate entities. It would seem, therefore, that while the statute speaks of a consolidation, it embraces two processes — one, a consolidation, and the other a merger.

In 8 Thompson on Corporations (3 Ed.), 63, Section 6010, it is said:

''Consolidation takes place where two or more existing corporations are consolidated into a single corporation, and the existence of the uniting corporations is terminated and the consolidated company succeeds in a general way to the rights and franchises and acquires the property and assumes the obligations and liabilities of all the constituent companies. In the ordinary legal phraseology, the term 'consolidation' is generally used to indicate both the act and the result of uniting two or more corporations into one. Whether a transaction amounts to a consolidation or a merger depends largely on the intention of the parties.''

And at page 66, it is said:

''In a merger of two or more corporations, one of the merged corporations survives; that is, the merger

consists in the uniting of two or more by the transfer of all the property to some one of the existing corporations, which continues its existence, while the others are swallowed up by or merged in the one that exists. And in this respect, it differs from a consolidation, wherein, as will be seen, all the corporations terminate their existence and become parties to a new one. The true test as to whether or not there has been a merger, is as to whether the existence of one of the corporations has been preserved and the other has ceased to exist.''

The record shows that the name of The Cincinnati Gas & Electric Company was retained, and the form and terms of the temporary certificate indicate that the new stock was to be issued by the existing corporation. One witness expressly states that the new certificate was for stock in the same company. We, therefore, conclude that there was, in effect, an amendment of the articles of incorporation of The Cincinnati Gas & Electric Company, whereby, *inter alia,* the capital stock was changed in accordance with an agreement with Columbia Power Company, and that the latter company was absorbed by the former. In other words, there was a merger. Therefore, Amelia Schaefer had stock in the same corporation. Was it the same stock which she received under the will of her deceased husband?

In seeking an answer to this question we assume that Amelia Schaefer was not obliged to accept stock in the ''Consolidated Corporation.'' She had the right to insist upon being paid the fair value of her stock on formation of such consolidation or merger without her consent. Her acceptance of the new certificate was voluntary. And there can be no doubt that her interest in the corporation was substantially different under the new certificate. She was entitled to 5% dividend and no more, whereas her common stock en-

titled her to full participation in all earnings of the corporation. Her common stock gave her at all times the right to vote, whereas she had no right to vote as a preferred stockholder, except under specified conditions. There was no right to redeem the common stock, but the preferred stock could be redeemed upon payment of $107.50 per share. These differences were so great that it would seem they could not be imposed by the Legislature itself upon a stockholder *in invitum,* even under the reserved power to repeal, alter, or amend. *State, ex rel. White,* v. *Neff,* 52 Ohio St., 375, 40 N. E., 720, 28 L. R. A., 409. Certainly, the Legislature has not authorized the coercion of stockholders into yielding to such fundamental changes. Sections 8623-15 and 8623-72, General Code.

It seems to us that the stock which Amelia Schaefer received as a result of the consolidation proceedings was not the same stock which she had before. By and with her consent her old stock was replaced by this new stock. The change could not have been forced upon her, and that indicates that what she received did not result from the original relation evidenced by the old certificate. It was a new creation, establishing a different relation between the corporation and the stockholder. If she had elected to take the value of the old stock, as was her right, the money would have been the proceeds of that stock, but not the stock. It seems equally clear that when she elected to and did receive new stock, what she received was not the same thing, but a different one. It is true that the new certificate evidenced her relation as stockholder with the corporation of the same name, but the rights inhering in that relation were totally different. If the original, The Cincinnati Gas & Electric Company capital structure, had included both common and preferred stock, and Amelia Schaefer had concluded that she would rather have preferred stock, and accordingly had ex-

changed her common stock for preferred stock, it seems clear that she would have had a different property after the exchange. We see no substantial difference between the hypothesis and the case before the court.

And, also, if Amelia Schaefer had contracted to sell her common stock, could she after consenting to and receiving the preferred stock have performed her contract by delivering the latter? Could not the purchaser have declined to accept it on the ground that it was not what he purchased?

Section 8577, General Code, provided by its express terms for the special case of a surviving spouse owning at the time of death property which came from the deceased spouse. That section was applicable to a particular situation, and if the circumstances do not exist, the general provisions for inheritance control. We have reached the conclusion that the facts do not exist for the application of Section 8577, General Code, and that, therefore, the next of kin of the deceased husband are not entitled. As to this property, we find that the next of kin of Amelia Schaefer are entitled. It results that the judgment below must be reversed and judgment rendered in favor of plaintiffs in error.

*Judgment reversed and judgment for plaintiffs in error.*

Ross, P. J., and HAMILTON, J., concur.