KNAUSS, ADMR., APPELLEE, *v.* KNAUSS ET AL., APPELLANTS.

(Decided December 6, 1937.)

*Messrs. Bowman & Hanna,* for appellee.
*Mr. Edward G. Kirn, Mr. Harry Kilburger* and *Mr. Eugene Carlin,* for appellants.

OVERMYER, J. · This proceeding was begun in the Probate Court of Wood county by the filing of a petition by appellee, as administrator of the estate of Matilda Aldenderfer, deceased, against a number of defendants, among whom were Denver Aldenderfer and Homer Aldenderfer, the appellants in this court.

In the petition plaintiff alleges that his decedent was the surviving spouse of Chas. E. Aldenderfer, who died testate December 10, 1932, devising and bequeathing all of his estate to his wife, Matilda; that Matilda died intestate on December 21, 1935, leaving no surviving spouse, children or other lineal descend-

ants. The petition alleges that the only assets of her estate, as shown by the inventory, were certain United States Treasury bonds and certificate of deposit, fully set out and enumerated in the petition and totalling $30,495.50.

It is further stated that Denver Aldenderfer and Homer Aldenderfer, appellants herein, together with Jennie Aldenderfer, are all the next of kin of Chas. E. Aldenderfer, and that they make some claim to a right to share in the distribution of the estate of Matilda Aldenderfer, which right the petition denies. It is also alleged that all the property devised by the husband to the wife was disposed of by the wife in her lifetime and that at her death there was none of the identical property in her estate which she had received from the estate of her husband. The prayer asks the court to determine the rights of the parties.

The appellants, as defendants, filed answers admitting the general fact allegations set forth in the petition, but denying that the property bequeathed to Matilda by her husband had all been disposed of in her lifetime, and aver that $23,000 of the same was the identical property she received by the will of her husband.

On the issue presented the Probate Court, on hearing, and the Common Pleas Court, on appeal, both found for the administrator and against the Aldenderfers. This appeal seeks a reversal of the judgment.

A determination of the rights of the parties requires an interpretation of Section 10503-5, General Code, the so-called "half and half" statute, and the application of such interpretation to the facts herein as shown by the evidence.

We are spared the necessity of an interpretation of that statute by the decisions of the Supreme Court and other Ohio courts. The courts have definitely

said that in order for Section 10503-5, and former Section 8577, General Code, to apply, the property involved must be the *identical property* which came from the deceased spouse to the surviving spouse. *Guear* v. *Stechschulte, Admr.,* 119 Ohio St., 1, 162 N. E., 46; *Wilson* v. *Eccles,* 119 Ohio St., 184, 162 N. E., 797; *Berndt, Admr.,* v. .*Lusher,* 40 Ohio App., 172, 178 N. E., 14; *Murphy, Admr.,* v. *Niehus,* 50 Ohio App., 299, 198 N. E., 197; *Russell* v. *Bruer,* 64 Ohio St., 1, 59 N. E., 740.

The term "identical property" as used in these cases must be given its legal definition and signification. Counsel for appellants are contending for a more general and liberal, or rather, loose definition. They speak of it meaning "the same thing"; "alike"; "equal"; or "similar." We know of no synonym that can justifiably be used for the word "identical" in a legal sense. The word "same" is the popular word used, "identical" the philosophical word, and denotes "absolutely the same." The word "identical" is more specific and absolute than the words "alike," "same," "similar," "equivalent," or any other word often used in common speech to denote a general corresponding identity. The opinions in the cases above cited, and others examined and not cited, clearly show that the word "identical' is used in relation to the statute in its strictly legal sense. See also: *Carn* v. *Moore,* 74 Fla., 77, 76 So., 337; *Empire State Nail Co.* v. *Am. Solid Leather Button Co.,* 71 F., 588, 589.

Applying this test to the property scheduled in the inventory of the intestate, Matilda Aldenderfer, and comparing that inventory with the inventory of her husband, Chas. E. Aldenderfer, both of which are in evidence, what do we find?

At the time of his death in December, 1932, Chas. E. Aldenderfer owned $17,000 worth of Fourth Liberty Loan bonds bearing 4½% interest per annum. He

also owned an undivided half interest in $8,000 worth of the same kind of bonds, his wife Matilda owning the other undivided half. At the time of Matilda's death, in December, 1935, she owned no Fourth Liberty Loan bonds of any kind, not a single one of the twenty-three several and separate 4½% Liberty Loan bonds scheduled in the inventory of the Chas. E. Aldenderfer's estate, or any other Liberty Loan bonds. She did own twenty-three United States Treasury bonds, registered in her name, carrying various rates of interest, none of which were 4½%, having various due dates, none of them having the same due date as the Fourth Liberty Loan bonds. The evidence shows that after the Fourth Liberty Loan bonds came into the hands of the wife, Matilda, by virtue of her husband's will, she did what she had a perfect right to do under the will, viz., convert those securities into other and different securities. In fact, if she desired to continue to receive an income from them she was required to convert them, for at least some of them had been called in by the Government.

It is argued that since the United States Treasury bonds referred to are obligations of the same Government that issued the Liberty Loan bonds, they are "identical property." Suppose Matilda had taken currency for the Liberty Loan bonds, as they were called by the Government, as she would have had a right to do. Could it be claimed that the currency, each bill of which is also an obligation of the same Government, would then have been the "identical property" she had received from her husband? Surely no one would contend for a moment that such claim would be tenable.

None of the Treasury bonds listed in the inventory of her estate is the "identical property" listed in the inventory of her husband's estate. Instead of being "absolutely the same," it is and must be conceded to

be "different" property, having different and various rates of interest, different and various dates of issues, different and various due dates ranging from ten to twenty-five years.

It is also shown that other differences existed in that the interest-paying dates of the Treasury bonds differed and varied from those of the Liberty. Loan bonds, and the Treasury bonds were payable in any form of legal tender while the Liberty Loan bonds were payable in gold. The argument advanced by appellee that all these characteristics affect the marketability of any bonds cannot be disputed.

In *Murphy* v. *Niehus, supra,* a test is suggested which may well be applied here. Suppose Matilda Aldenderfer had entered into a contract to sell to another some of her Fourth Liberty Loan bonds. Could the buyer be compelled by a court to accept other United States Treasury bonds, bearing different rates of interest, different dates of issue, different due dates, different interest-paying dates, payable in different mediums of exchange, in fulfillment of the contract? We think not.

We find no error in the finding of the court below that the statute referred to is not applicable to the facts here disclosed in evidence, and the judgment will be affirmed.

*Judgment affirmed.*

LLOYD and CARPENTER, JJ., concur.