**SPEIDEL, Admr., Appellant v. SCHALLER et, Appellants; HARRIS, Jr., et, Appellees.**

**SPEIDEL, Admr., Appellee v. SCHALLER et, Appellees; THRASHER, Appellant.**

Ohio Appeals, First District, Clermont County.

No. 154.  Decided April 22, 1943.

Messrs. Nichols, Speidel & Nichols, Batavia; Messrs. Nichols, Wood, Marx & Ginter, Cincinnati, for Russell F. Speidel.

Messrs. Nichols, Wood, Marx & Ginter, Cincinnati, and Mr. A. J. Zanone, Cincinnati, for Theresa Schaller.

Messrs. Garrett & Ruark, for Lillian S. Berkson.

Mr. W. B. Mente, Cincinnati, for Edith W. Thrasher.

Messrs. Marble & Vordenberg, Cincinnati, for Christina F. Harris, et.

Mr. Harry Britton, Batavia, for Cora W. Hayden.

By MATTHEWS, J.

We are considering an appeal and cross-appeals from an order of the Probate Court determining the rights of the parties in the real and personal property owned by Edith B. Harris, intestate, at the time of her death, reserving, however, for future consideration and adjudication the issue of the rights of the parties in two items of personal property.

The jurisdiction of the Probate Court to make such an order is assailed in this court on the one hand and the jurisdiction of this court to entertain this appeal is assailed on the

other. We must dispose of these jurisdictional questions before considering any other question.

(1) It is urged that because the Probate Court did not determine the rights of the parties as to all the decedent's property, but reserved its decision as to some, no judgment or final order was made from which an appeal could be taken to this court. There can be no doubt as to the definiteness and finality of the language used by the court in his determination of the rights of the parties to the extent that the court assumed to act. The sole reason for the assertion that it is not final is that the court reserved its adjudication as to other and different property of the decedent. We do not believe the reason is sound. Each item of property was separate and distinct and a decision as to the devolution of one piece could by no possibility have any effect upon the judgment as to any other. Each was as separate and distinct as separate and distinct causes of action, and it is clear that the finality of a judgment is not destroyed by a reservation of another cause for future adjudication. The court reserved no control over its judgment as to the devolution of the property involved in this appeal. We believe we stated the correct test of finality in the case of **Ryan v Kroger Grocery & Baking Co., 56 Oh Ap 469,** in this language, quoted from 2 Am. Juris., at 862:

" 'In other words, a final judgment is one which operates to divest some right in such a manner as to put it beyond the power of the court making the order to place the parties in their original condition after the expiration of the term; that is, it must put the case out of court, and must be final in all matters within the pleadings.' "

The Probate Court has four terms annually for the purpose of securing relief after judgment. **Sec. 11643 GC.**

Applying that test, there can be no doubt about the finality of the judgment under review. In 2 Am. Juris. 860, it is said:

"A judgment, order, or decree to be final for the purposes of an appeal or error, must dispose of the cause, or a distinct branch thereof."

And, at page 864:

"The fact that other proceedings of the court may be necessary to carry into effect the rights of the parties, or that other matters may be reserved for consideration, the decision of which one way or another cannot have the effect of altering the decree by which the rights of the parties have been declared, does not necessarily prevent the decree from being considered final, unless there is some further judicial action contemplated by the court."

The order appealed from determined the rights of the parties in all the property described in the petition. It was disclosed in the answers and at the trial that the decedent had certain rights under the will of her deceased husband, who was domiciled in Canada at the time of his death, and in certain annuities and insurance policies. It was as to these items that the court directed a continuance. The decision of the rights of the parties as to these actions could not possibly affect the question as to the rights of the parties in the other items to which the judgment relates. We are of opinion that the reservation of decision as to those items does not affect the finality of the court's determination as to the items specifically covered by the judgment.

We are, therefore, of the opinion that this court has jurisdiction to review this judgment.

(2) It is urged that the Probate Court exceeded its jurisdiction by adjudicating the rights of the parties in specific property. The claim is that as the plaintiffs describe their pleading as a "Petition to Determine Heirship", the power of the Probate Court is limited to the authority conferred by the sections of the General Code under the heading "Determination of Heirship", and that those sections only confer authority to identify by name the next of kin without any determination of the ratio in which they share the estate and without any direction to the fiduciary in that regard. If that is the correct construction, the remedy provided is wholly inadequate for the purposes of the fiduciary. Let us see whether that construction is required.

Under the caption "Determination of Heirship" are §§10509-95 to 10509-101 GC, both inclusive. By §10509-95 GC, it is provided that:

"Whenever property passes by the laws of intestate suc-

cession, or under a will to a beneficiary or beneficiaries not named in such will, proceedings may be had in the probate court to determine the persons entitled to such property."

In §10509-96 GC, is set forth the essential parties, form, and contents of the petition concluding as follows: "The petition shall contain a concise statement of the pertinent facts and shall conclude with a prayer for the determination of the heirs and distributees of such decedent or of the devisees or legatees not named in the will, as the case may be, **and their respective interests in the estate.**"

By §10509-99 GC, it is made the duty of the court, if satisfied by the evidence, to "find and adjudge who are or were the heirs or next of kin of the decedent, **and entitled by the law of this state to inherit the estate of the deceased.**"

And by §10509-101 GC, it is enacted that the fiduciary may make a final distribution upon such determination free from "liability arising from such determined interest, and the title to any property thereupon purchased from such fiduciary shall be free from such determined interest."

We believe we have quoted enough from the statute to make it clear that the General Assembly intended to clothe the Probate Court with more than the power to make an abstract declaration of the names of those persons standing in a certain relationship to the decedent as determined by the statutes of descent and distribution. The language imports that it was the legislative intent to authorize the Probate Court to relate that declaration to the interest in the decedent's estate taken as a result of the heirship.

But is it true that the Probate Court could not draw authority from any other source in this action? We do not think so.

Certainly, the mere fact that the pleader described his petition as one to declare heirship has no such limiting effect upon the court's jurisdiction. The substantive allegations are more comprehensive and the prayer is for a determination not only of the names of the heirs, but also of the interest which each inherits. They and not the caption would control the extent of the relief if within the jurisdiction of the court— and we think it is.

Among other powers conferred upon the Probate Court by §10501-53 GC, it is given jurisdiction:

"(3)  To direct and control the conduct, and settle the accounts of executors and administrators, and order the distribution of estates; * * *"

"(12)  To render declaratory judgments;

"(13)  To direct and control the conduct of fiduciaries and settle their accounts."

"Such jurisdiction shall be exclusive in the Probate Court, unless otherwise provided by law."

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is otherwise expressly limited or denied by statute."

It is seen from this that the probate court is given not only plenary power but that that power is made exclusive unless otherwise provided by law, and in **Unger v Wolfe, 134 Oh St 69**, the court held that §11215 GC, conferring jurisdiction generally upon the Common Pleas Court in existence at the time of the enactment of §10501-53 GC, could not be regarded as coming within the meaning of the phrase "unless otherwise provided by law" so as to give the Common Pleas Court concurrent jurisdiction over a claim for services rendered by an attorney in an attempt to remove the guardian of an incompetent.

So we hold that the Probate Court had jurisdiction to make the order appealed from. We, therefore, proceed to determine whether any error intervened in the exercise of this jurisdiction.

(3)  The issue in this case is between the heirs of the decedent claiming under the general statutes of descent and distribution (§10503-4 GC), and the heirs of her deceased husband claiming under the "Half and Half" statute (§10503-5 GC, in effect at decedent's death).

Edith B. Harris died intestate on May 7th, 1941. Her husband died on March 18th, 1941. Neither left surviving children. The husband had a sister who died many years before his death. He left surviving as his next of kin certain descendants of his grandparents, and they are claiming one-half of all the property that came to Edith B. Harris by descent, devise, or deed of gift from her husband, George R. Harris. Some question was raised as to whether they would take per capita or per stirpes but as they come within ¶8 of §10503-4, GC, being descended from the grandparents of the

deceased husband of the intestate, they take per stirpes, as they are of unequal degree of consanguinity and therefore do not come within §10503-7 GC, providing for .per capita descent when all are of an equal degree of consanguinity.

In the petition the administrator alleged his belief that certain items of property had come to the decedent by gift from her deceased husband. The heirs of the deceased husband admitted this, and claim that there is therefore no issue as to such property. But this contention ignores the denials made by the heirs of the intestate. The administrator could not have bound them by his positive admission and his expression of an opinion based on information certainly does not have that effect. The task therefore devolved upon the Probate Court to determine from the evidence what, if any, of the decedent's property came by devise, descent, or deed of gift from the deceased husband. And this court would not be justified in disturbing its findings unless manifestly against the weight of the evidence.

Counsel are in disagreement as to the construction of §10503-5, GC. It is argued that in construing that section the word "deed" must be given the meaning which it has in legal nomenclature, that is, a sealed instrument, or, as we understand the implications of the argument, at least an instrument that complies with Ohio recording act, requiring two witnesses and a certificate of acknowledgment; and that as there was no evidence to indicate that any of the personal property was so conveyed by the husband to the decedent, the heirs of the former can have no possible right even assuming that the transfer was by way of gift. We cannot adopt this reasoning. It violates the entire spirit and purpose of §10503-5 GC. Clearly, the test established by that section as to gifts inter vivos or causa mortis between husband and wife, is whether the transfer from the deceased spouse to the intestate spouse whose estate is being distributed was with or without consideration, and not whether the mode of transfer was in one way or another. If it was for a consideration, the chain of descent was completely broken. If it was a gratuity it was thought to be. just that, the heirs of the donor should share equally in the event of intestacy. We think it clear that the word "deed" in this statute should be given its ordinary, primary meaning of "Act; action;—a word of wide application, including whatever is done, good or bad, great or small." Webster's New International Dictionary. Any act of the donor that is effective to transfer the property—real or personal—

to his or her spouse comes within the meaning of the word as used in this statute. As to most personal property, intent and delivery are the only essential elements. No writing whatever is required to effect a transfer of title. To construe this statute to contemplate more would limit its applicability to those transfers between such husbands and wives as had a prevision of this effect of the transfer upon the distribution of the property upon the death of the donee, and, therefore, made provision against it by some sort of a written document not otherwise required to make effective their act.

The cases construing §10503-5 GC, make it clear that it applies only to the identical property which descended from, or was devised, bequeathed, or given by the deceased spouse to the intestate. Unless the same property has continued to be owned by the intestate and forms an asset of his or her estate, the statute has no application. The doctrine of tracing property into a transmutted form familiar in the law of trusts, has no relevancy to this inquiry. **Guear et v Stechschulte, Admr., et, 119 Oh St 1**, 162 N. E., 46; **Wilson v Eccles, et, 119 Oh St 184**, 162 N. E., 797; **Murphy v Niehus, 50 Oh Ap 299.**

But, it is said that §10503-5 GC, can have no application to this estate because the deceased spouse left no brother or sister surviving him. He did have a sister who predeceased him by many years. If she had survived him and this intestate, she would have come within the terms of the statute and would have inherited one-half of the property that came to the intestate from her brother. The statute provides that if there are deceased brothers or sisters, their next of kin shall take. It does not provide that the right of the next of kin shall be dependent upon a brother or sister surviving the deceased spouse and predeceasing the intestate, and we know of no rule of statutory interpretation that would justify the court imposing that condition. It would be judicial legislation.

The question as to the burden of proof was debated at the bar. In 20 Am. Juris., 148, it is said: "The burden rests upon the party who, as the basis of his claim or defense, asserts that he is within an exception or an exemption in a contractual stipulation or a statute to prove all the facts necessary to bring himself within such exception or exemption." See also: Annotation to case of Sullivan v Ward, (— Mass. —, 24 N. E. [2d] 672), 130 A. L. R. 437, at 443 and 478. The Ohio cases are in accord. **Mathews v Krisher, 59 Oh St 562 at 573, Ritter v Ritter, 62 Oh Ap 488 at 494**, and 11 O. Jur. 293.

It should also be noted that the statute provides that it shall be applicable to property that came to the intestate from the deceased spouse in one of three ways—by devise, descent, or by deed of gift. It is not sufficient for the claimant to point to property of the estate that was once owned by the deceased spouse. This right is dependent entirely upon the manner in which the title was transferred from the deceased spouse to the intestate. If the transfer was not by devise, descent, or deed of gift, the identity of the property confers no right of inheritance upon him.

It frequently happens that when transfers from husband to wife are the subject of judicial inquiry, no evidence is available of the circumstances under which the transfer was made. Frequently, the court is forced to resort to legal presumptions in order to decide the issue of fact involved. That is the situation here.

One of the presumptions resorted to where a transfer is made from a husband to his wife is that he intended a gift. In Dunn v Mullan, (211 Cal. 583, 296 Pac. 604), 77 A. L. R., 1015, at 1019, it is said: "It is well established that if a husband conveys to his wife his separate or community property, the mere fact of the conveyance itself will raise the prima facie presumption that he intended the conveyance to be a gift." This rule prevails in Ohio. **21 O. Jur. 493.**

Let us test the judgment of the Probate Court by these rules.

The court found that a Clermont county farm had been acquired by purchase, and, therefore, its descent was not governed by §10503-5 GC, but by §10503-4 GC, under which it passed to the intestate's next of kin. The evidence shows that this farm was acquired from one Schuholz. The transaction involved the exchange of a residence property, the title to which was in the intestate's name, and a money consideration, which was paid by the intestate's check. The deed from Schuholz, however, was made to the intestate and her husband. A survey disclosed that the acreage was very much less than that stated in the contract and litigation resulted which continued for several years. Upon the termination of this litigation the deed from Schuholz to the intestate and her husband was recorded and on the same day a deed from the husband to the intestate conveying his one-half interest was also recorded, the consideration recited being one dollar and

other considerations. There was no evidence that the husband paid any part of the consideration for this farm.

The Probate Court held that the entire title to this farm passed under §10503-4 GC, to the next of kin of the intestate.

We are of the opinion that the court was justified in concluding that the husband never had any beneficial interest in this farm. The fact that he paid no part of the consideration and immediately conveyed to his wife the legal title for which she had paid furnishes sufficient foundation for the inference. This court would certainly not be justified in disturbing the finding.

Next, the Probate Court found that certain stocks and bonds belonging to intestate were the identical property that had been owned by her husband and that such property passed under §10503-5 GC, one-half to the next of kin of the intestate and one-half to the next of kin of the deceased husband, parties to this action. The objection to this finding by the intestate's next of kin is that there is no evidence that this property had been given by deed of gift or otherwise by the husband to the wife. From what we have said, it is seen that it is our view that any effective transfer of the title satisfies the statutory requirement of "deed of gift" and that in the absence of evidence to the contrary, as here, there is a presumption of gift. We find no error in this regard.

Finally, the court held that the remaining property was not property that had come to the intestate from her deceased spouse. It was conceded that §10503-5 GC, applied only to the identical property. As to most, the evidence is clear that the most that the evidence proved was that the proceeds of property that had come to the intestate from her husband had been used in the purchase of such property. It was not the same property.

Of course, the rights of the parties became fixed as of the date of the intestate's death. Any change in the property after that date could not affect the application of the statutes of descent and distribution. As to Item 30 in the inventory (Forney Creek Bonds) the evidence is not entirely clear, but it can be deduced from it that in the intestate's lifetime she had agreed to accept refunding bonds and had actually surrendered the original bonds to the treasurer of the political district that issued them, who, sometime after the intestate's death, delivered the refunding bonds to the administrator. The Pro-

bate Court found that the intestate had transferred title to the original bonds in her lifetime and at her death she owned not those bonds but a contract right to the refunding bonds, which were thereafter delivered to the administrator. We would not be justified in disturbing this finding.

For these reasons, the judgment of the Probate Court is affirmed in all respects.

ROSS, P. J., and HILDEBRANT, J., concur.