## NATIONAL BANK OF LIMA v. ALLEN et.

Probate Court, Allen County.

No. 26728.   Decided February 18, 1952.

Bentley, Cory, Boesel & Leonard, Lima, for plaintiff.
Lippincott & Lippincott, Lima, for defendants heirs of Amzy W. Fisk.
Irish & Southwick, Columbus, for defendants heirs of Anna B. Fisk.

## OPINION

By QUATMAN, J.

The Court finds that the estate of Amzy W. Fisk consisted in part of twenty shares of common stock in the Standard Oil Company of Ohio, being Certificate No. NYCO 4308; that this stock was bequeathed by his will to his widow, Anna B. Fisk; that Anna B. Fisk, on April 8, 1940 caused these shares to be transferred to her name on the books of the company and as evidence thereof was issued Certificate No. 17709; that thereafter on May 4, 1945, Anna B. Fisk, pursuant to a resolution of the company changing the par value of the common stock from $25 to $10, exchanged Certificate No. 17709 for Certificate No. NYCO 3269, evidencing her ownership of 50 shares having the new par value; that the 50 shares represented the original 20 shares on a stock split ratio of 2½ to 1; that in 1943 Anna B. Fisk, by right of subscription warrants issued by the company, purchased 3 shares of convertible preferred stock in the company; that in 1945 Mrs. Fisk converted these three shares of preferred into common stock, and received seventeen shares of the $10 par common stock, being Certificate NYCO 3425; that in addition to the above mentioned sixty-seven shares, Mrs. Fisk acquired an additional three shares of common stock by reason of stock dividends paid in December 16, 1946, December 10, 1948 and December 15, 1950; that this stock is evidenced by Certificates NYCO 18243, NYCO 53645 and NYCO ———, being one share each. The court also finds that Amzy W. Fisk, during his lifetime, transferred to Anna B. Fisk, by warranty deed, all of the real property contained in the inventory of the latter's estate. The court is now called upon to decide whether or not all or part of the foregoing property owned by Anna B. Fisk at the time of her death passed one-half to the heirs of Anna B. Fisk and one-half to the heirs of Amzy W. Fisk pursuant to §10503-5 GC, or in the alternative whether to the heirs of Anna B. Fisk pursuant to §10503-4 GC, being the Statute of Descent and Distribution.

Sec. 10503-5 GC is popularly known as the "half and half" statute and reads as follows:

"Descent of estate which came from deceased spouse. When a relict of a deceased husband or wife dies intestate and without issue, possessed of identical real estate or personal prop-

erty which came to such relict from any deceased spouse, by deed of gift, devise, bequest or descent, or by virtue of an election to take under the statute of descent and distribution, then such estate, real and personal, except one-half thereof which shall pass to and vest in the surviving spouse, if any, of such relict, shall pass to and vest in the children of the deceased spouse from whom such real estate or personal property came, or their lineal descendants, per stirpes. If there are no children, or their lineal descendants, then such estate, real and personal, except for the one-half passing to the surviving spouse, if any, of such relict, shall pass and descend as follows: one-half to the other heirs of such relict, under the provisions of the other statutes of descent and distribution, in the same manner and proportions as if the relict had left no surviving spouse; and one-half to the parents of the deceased spouse from whom such real estate or personal property came, equally, or the survivor of such parents, and if there be no parent surviving, to the brothers and sisters, whether of the whole or of the half blood of such deceased spouse, or their lineal descendants, per stirpes.

"If there be no children, or their lineal descendants, no parent and no brothers or sisters, whether of the whole or of the half blood, or their lineal descendants, of the deceased spouse from whom such real estate or personal property came, who survive such relict, then the provisions of this section shall not apply, and all such real estate and personal property shall pass and descend under the provisions of the other statutes of descent and distribution.

The courts in Ohio have interpreted beyond doubt that the property referred to in §10503-5 GC must be the identical property before that section becomes operative. **Guear v. Stechschulte, Adm'r., 119 Oh St 1,** 162 N. E. 46; **Wilson v. Eccles, 119 Oh St 184,** 162 N. E. 797; **Berndt, Adm'r v. Lusher, 40 Oh Ap 172,** 178 N. E. 14; **Murphy, Adm'r v. Niehus, 50 Oh Ap 299,** 198 N. E. 197; **Russell v. Bruer, 64 Oh St 1,** 59 N. E. 740; **Knauss, Adm'r v. Knauss, 58 Oh Ap 183,** 16 N. E. 2d 483.

In **Knauss, Adm'r v. Knauss,** 1937, supra, the court in **58 Oh Ap** on page **185,** 16 N. E. 2d on page 484, analyzes the term "identical property" at considerable length: "The term 'identical property' as used in these cases must be given its legal definition and signification. Counsel for appellants are contending for a more general and liberal or rather, loose definition. They speak of it meaning 'the same thing'; 'alike'; 'equal'; or 'similar.' We know of no synonym that can justifiably be used for the word 'identical' in a legal sense. The word 'same' is the popular word used, 'identical' the philo-

sophical word, and denotes 'absolutely the same.' The word 'identical' is more absolute than the words 'alike,' 'same,' 'similar,' 'equivalent,' or any other word often used in common speech to denote a general corresponding identity. The opinions in the cases above cited, and others examined and not cited, clearly show that the word 'identical' is used in relation to the statute in its strictly legal sense."

The only test thus far developed in determining whether or not the property in question is identical to that in question is that applied in enforcing sales agreements, viz., could a purchaser decline to accept the property for the reason that it is not identical to the property he agreed to purchase? See Murphy, Adm'r v. Niehus, supra; Knauss, Adm'r v. Knauss, supra.

Having studied facts of the instant case in the light of the above authorities, the court is of the opinion that the identity of the stock in question was not destroyed by Anna B. Fisk having exchanged the certificate received from the estate of her husband, Amzy W. Fisk, for a new certificate in her own name. A certificate of stock is merely evidence of ownership of shares in a corporation, the shares are the property in question and not the certificate. Surely if the property in question were an automobile it could not seriously be contended that a new certificate of title taken in the name of Anna B. Fisk would destroy the identity of the auto. Again can it be said that when the corporation, by resolution properly taken and without prejudice to any stockholder, reduced the par value of the shares from $25 to $10, thereby increasing the holdings of Anna B. Fisk from twenty shares to fifty shares, the identity of the property was destroyed? We think not. Such juggling of corporation finance in the modern complex business world has come to be commonplace. The change in par value did not change the name nor the corporate purpose of The Standard Oil Company. The investment remained the same in value and in fact, without Anna B. Fisk having added or taken anything from it. Such a change in par value, intervening in a sales contract, would not, we think, so materially and substantially alter it as to be a bar to a subsequent action for specific performance. The fifty shares were not property acquired by purchase as in the case of Guear v. Stechschulte, Adm'r., supra, nor was stock surrendered by the relict to the corporation, or which by reason of a bond merger with another corporation, new stock is issued, as in Murphy, Adm'r v. Niehus, supra. The court in the latter case very learnedly bases its decision on whether the act of the corporation was so fundamental as to change the

identity of the stock and concludes, properly, that the identity was lost. The change was in fact so fundamental that the relict could have refused to accept the new issue. The case is easily distinguished from the instant one.

Although this court has previously held that stock dividends belong to the corpus of a trust as being directly related to it and are not payable to the life tenant, see Armentrout v. Armentrout, Ohio Prob. Ct., 100 N. E. 2d 555, nevertheless stock dividends in the instant case are not so related to the original shares as to be declared identical property as defined in §10503-5 GC. It may well be argued that a stock dividend leaves the investment in the same position as before its declaration. However by the same token the new certificate can be sold in the market place without increasing or decreasing the value of the original shares. For the purpose of this case a stock dividend differs from a stock split in that the former gives added value to the stockholder while the latter leaves him in the same position both in his investment and in the market place. The Ohio Supreme Court has ruled that the property concerned by §10503-5 GC in order to be identical **must not be accumulations** from the deceased consort's property. **Wilson v. Eccles, 119 Oh St 184**, 162 N. E. 797, supra. It was also held in the case of **Speidel, Adm'r v. Schaller, 73 Oh Ap 141**, 55 N. E. 2d 346, that the doctrine of tracing property into a transmuted form familiar in the law of trusts, has no relevancy to an inquiry of this nature.

The authorities herein cited are all agreed that property purchased by the relict with the property, or proceeds of property, received from a deceased consort is not identical property within the meaning of §10503-5 GC. Accordingly the seventeen shares in question, being Certificate No. NYCO 3425 having originally been purchased by Anna B. Fisk, along with the three shares paid as stock dividends, descend as part of her estate, under §10503-4 GC being the Statute of Descent and Distribution.

The real estate in question was transferred by deed prior to death by Amzy W. Fisk to his wife, Anna B. Fisk, the relict herein. The instruments are clear and unambigious on their face and recite a valuable consideration. The rule is well settled that for the purpose of descent and distribution when a deed contains a recital of a valuable consideration received from the grantee, it is to be construed as a deed of purchase, and it is not competent to show by parole evidence that it was in fact a deed of gift in order to change the line of descent. **Gardner v. Kern, 115 Oh St 575**, 155 N. E. 134; **Patterson v. Lamson, 45 Oh St 77**, 12 N. E. 531; **Groves v.**

**Groves, 65 Oh St 442,** 62 N. E. 1044; **Thiessen v. Moore, 105 Oh St 401,** 137 N. E. 906. It is therefore held that the real estate passes in the same manner as the stock purchased and the stock dividends, viz., to the heirs of Anna B. Fisk pursuant to §10503-4 GC.

Coming now to the determination of the heirs of Anna B. Fisk and of Amzy W. Fisk, and as to the amount each shall inherit, the court finds as follows:

As to Anna B. Fisk: Albert Allen, brother, one-sixth (1/6); John W. Allen, brother, one-sixth (1/6); Louise A. Carroll, sister, one-sixth (1/6); Helen C. Miller, sole heir under will of Harriet Cronley, sister of Anna B. Fisk, one-sixth (1/6); Nell Moder, niece, Helen Neal, niece, and Kathryn Weimer, niece, all children of Minnie Frambes, deceased sister of Anna B. Fisk, one-eighteenth (1/18) each; Glen Allen, nephew, Venture Allen, nephew, and Eugenia A. Neil, niece, all children of Charles Allen, deceased brother of Anna B. Fisk, one-twenty-fourth (1/24) each; Erma Coffland Miller, grandchild of the said Charles Allen by deceased daughter, Hazel McLennan, one-twenty-fourth (1/24); all being of an equal degree of consanguinity.

As to Amzy W. Fisk: Viola M. Smiley, niece, one-fourth (¼); Wilbur M. Pennypacker, nephew, one-fourth (¼); Motter C. Pennypacker, nephew, one-fourth (¼); Russell A. Pennypacker, one-fourth (¼).

The court further finds that the parties hereto have stipulated and agreed as to the disposition of all other items contained in the inventory as filed in the estate of Anna B. Fisk, with the exception of a Standard Oil Company dividend check in the amount of $35. The court finds that the said check represents a regular dividend paid on the seventy shares owned by Anna B. Fisk, at fifty cents (50c) per share. The court having previously found that fifty of these said shares should be distributed pursuant to §10503-5 GC and the balance pursuant to §10503-4 GC, the $35 is ordered divided and distributed in like manner.

Journal entry may be prepared accordingly. Exceptions noted. Plaintiff to pay the cost.